**Richard RYLEWICZ, Thomas Cummings and Barbara Cummings, Plaintiffs–Appellants,**

v.

**BEATON SERVICES, LTD., et al., Defendants–Appellees.**

No. 88–2725.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 12, 1989.

Decided Nov. 1, 1989.

Lowell E. Sachnoff, Sachnoff, Weaver & Rubenstein, Jeffrey T. Gilbert, Clifford J. Shapiro, Sachnoff & Weaver, Arnold A. Pagniucci, Sachnoff, Weaver & Rubenstein, Theodore M. Becker, J. Samuel Tenenbaum, Tenenbaum & Senderowitz, Chicago, Ill., for plaintiffs-appellants.

Michael S. Blazer, Barnett & Associates, James Figliulo, Steven H. Gistenson, Foran, Wiss & Schultz, Thomas J. Reed, Patricia A. Korn, Bruce C. Howard, Michael P. Connelly, Chadwell & Kayser, Chicago, Ill., Richard G. Schultz, James Figliulo, Foran, Wiss & Schultz, Alan H. Silberman, Sonnenschein, Carlin, Nath & Rosenthal, Evan A. Burkholder, John M. Hughes, Lord, Bissell & Brook, Michael H. King, Kurt H. Feuer, Eric S. Palles, Ross & Hardies, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, CUMMINGS and WOOD, Jr., Circuit Judges.

CUMMINGS, Circuit Judge.

This lawsuit stems from a state court trial of fraud and breach of contract claims. Following a $52 million jury verdict in favor of a company with which they were associated, Thomas Cummings and his wife Barbara Cummings filed an amended complaint in federal court, claiming that the losing parties to the suit had conducted a campaign of harassment and intimidation against them in violation of federal racketeering and civil rights statutes. Co-plaintiff Richard Rylewicz alleged that some defendants had violated the federal credit reporting statute. In a Memorandum Opinion and Order reported at 698 F.Supp. 1391 (N.D.Ill.1988), the district court dismissed the Cummingses' Counts I and II of the suit on standing grounds, dismissed certain defendants from Rylewicz's Count III because the applicable statute of limitations had lapsed, and relinquished jurisdiction as to Count IV, a pendent state claim brought against McDonald's by the Cummingses. Rylewicz and the Cummingses have appealed from the ensuing judgment. We affirm each of the district court's rulings.

## BACKGROUND

Central Ice Cream Co. ("Central") obtained a verdict of $52 million from defendant McDonald's Corporation and McDonald's System, Inc. ("McDonald's") on January 20, 1984, following a thirteen-week

trial in the Circuit Court of Cook County, Illinois. Plaintiff Thomas N. Cummings was president of Central, which was by the time of the verdict bankrupt and under the stewardship of a trustee. Co-plaintiff Barbara Cummings is his wife and was a substantial stockholder of Central. The third plaintiff, Richard Rylewicz, is the Cummingses' personal accountant.

On June 20, 1985, before judgment was entered in the breach of contract case and while a post-trial motion seeking judgment notwithstanding the verdict or a new trial was pending with the state trial court, the parties agreed to settle at a large discount from the verdict. The settlement provided for McDonald's to pay a total of $15.5 million plus interest during the pendency of any appeals. The Cummingses and their attorneys were to receive $4 million and Central and its counsel were to receive $11.5 million. Central was then in liquidation under Chapter 7 of the Bankruptcy Code, with Bernard C. Chaitman as trustee. Though he had participated in the state court trial as Central's representative, Thomas Cummings was not a party to the state court or bankruptcy proceedings.

On June 28, 1985, the trustee filed an application for bankruptcy court approval of the settlement agreement. Three weeks later, he applied for approval of an amended settlement agreement. The new agreement provided for payment of $15.5 million to Central without making any allocation to the Cummingses or securing any release from them. This amended settlement agreement was approved by the bankruptcy judge on October 9, 1985. *In re Central Ice Cream Co.*, 59 B.R. 476 (Bankr.N. D.Ill.1986). In that opinion, resolving several aspects of a conflict that has so far spawned at least five reported cases not counting this one, Judge Schmetterer ex-

plained at some length why the substitute settlement agreement should be approved as being in the best interest of Central's estate and its creditors. 59 B.R. at 484–488.

The Cummingses, among others, appealed to the district court from the bankruptcy judge's order approving the settlement. District Judge Leinenweber granted the trustee's motion to dismiss, holding that only the trustee had standing to appeal. *In re Central Ice Cream Co.*, 62 B.R. 357 (N.D.Ill.1986). Two of the shareholders, Joan Rafel and George Kamberos, pressed an appeal from the district court's dismissal. This Court summarily affirmed on January 29, 1987, and the estate collected the proceeds. See *Matter of Central Ice Cream Co.*, 836 F.2d 1068, 1071 (7th Cir. 1987).[1]

On December 23, 1985, plaintiff Richard Rylewicz filed the original federal suit against three principal defendants, claiming that they had violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, by requesting a consumer credit report about him for a false purpose. Rylewicz asserted that the defendants actually intended to obtain information about him "for use in connection with the pending lawsuit involving a corporation," subsequently identified as Central Ice Cream Co., in which he and some of his clients purportedly held undefined interests. This suit sought $50,000 in actual damages and $100,000 in punitive damages.

On May 29, 1986, the first amended complaint was filed, greatly broadening the scope of the action and the assemblage of parties.[2] In the amended complaint, the Cummingses joined Rylewicz as plaintiffs and added McDonald's Corporation, its chairman, and its general counsel as defendants. In Count III Rylewicz repeated the

---

1. The reported opinion did not involve the merits of the settlement but principally addressed the question whether the trustee was entitled to attorney's fees under Rule 38 of the Federal Rules of Appellate Procedure as sanctions for the failure of two stockholders (Rafel and Kamberos) to pursue their appeals from the district court's dismissal of their appeals from the bankruptcy court. See 836 F.2d at 1075–1076 and the related, follow-up case, *In the*

*Matter of Central Ice Cream Co.*, 841 F.2d 732 (7th Cir.1988).

2. In addition to the federal amended complaint, the Cummingses filed a parallel state court action. Defendants' Br. at 8–9. The state court action was apparently filed in case the federal action was unsuccessful. The Court has not been advised of its status.

allegations of his first complaint under the Fair Credit Reporting Act, but specified for the first time that the information sought about him was to be used "in connection with the Central Ice Cream litigation."

Count I of the amended complaint was brought by the Cummingses, claiming that defendants had engaged in various acts of "harassment, intimidation and terrorism" against them and their daughter Lydia in order to influence Thomas Cummings' testimony in the bankruptcy court and to force the Cummingses to accede to a compromise of the jury verdict in the Central Ice Cream litigation. The Cummingses alleged that the defendants thereby engaged in a pattern of racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. This Count sought $54 million in damages plus trebling pursuant to 18 U.S.C. § 1965(c).

Count II claimed that the Cummingses' civil rights were violated by the conduct alleged in Count I. Damages equal to those under Count I were sought on the basis of 42 U.S.C. §§ 1985(2) and 1986. Count III was Rylewicz's claim under the Fair Credit Reporting Act, which survived from the original complaint.

Count IV was a new pendent breach of contract claim brought by the Cummingses and asserting that McDonald's violated the settlement agreement of June 20, 1985, under which it was to pay $4 million to the Cummingses subject to approval of the bankruptcy court. This agreement was allegedly breached by the amended settlement agreement that awarded nothing to the Cummingses. Under this Count, the Cummingses sought $4 million in damages.

On July 21, 1988, the district judge handed down her Memorandum Opinion and Order, which properly took the factual allegations in the amended complaint to be true in considering defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). 698 F.Supp. at 1393. Even using that standard, the district court determined that Count I should be dismissed largely because the Cummingses "have failed to allege that the defendants

directly caused them to suffer a compensable RICO injury." *Id.* at 1396.

The district court then dismissed Count II because the damage provision of 42 U.S.C. § 1985(3) only provides relief to parties, and Thomas Cummings was not a party to the bankruptcy court proceedings. 698 F.Supp. at 1398. Since the Cummingses failed to state a claim under Section 1985, the court ruled that they were precluded from stating a treble damage claim under 42 U.S.C. § 1986, which is expressly tied into Section 1985. *Id.*

As to Rylewicz's Fair Credit Reporting Act claim, Judge Williams held that the two-year statute of limitations contained in 15 U.S.C. § 1681p barred suit against defendants McDonald's, Turner, Yastrow, Burke, Intertel, and Desnoyers & Associates. 698 F.Supp. at 1399–1400. The defendants' motion to dismiss Count III was denied, however, as to defendants Beaton Services, Ltd., United States Security Services Corporation, and Financial and Technical Investigations, Inc. because the action against those defendants was sufficiently timely.

Finally, the district court relinquished jurisdiction over the alleged breach by McDonald's of the earlier settlement contract involved in Count IV, which was a pendent state law claim. Since all the federal claims against McDonald's had been dismissed, the court was left without a federal question to be decided. 698 F.Supp. at 1401. Plaintiffs filed a notice of appeal on September 1, 1988.

## I. RICO

■ The initial Count of the first amended complaint is by far the lengthiest. Stripped of its extraneous allegations, the gravamen of the Count is that McDonald's attempts to cause Central Ice Cream to settle its $52 million state court jury verdict against McDonald's for $15.5 million violated RICO, specifically 18 U.S.C. §§ 1962(c) and 1962(d).

The fatal defect in this Count is that only the directly injured party, Central, can bring such a suit, as was explained by the

district court. 698 F.Supp. at 1394. Litigation under the RICO statute is only available to a person who is "injured in his business or property by reason of a violation" of the statute. 18 U.S.C. § 1964(c). Derivative actions such as that brought by the Cummingses are impermissible. *Flynn v. Merrick*, 881 F.2d 446 (7th Cir.1989); *Carter v. Berger*, 777 F.2d 1173 (7th Cir. 1985). We recently reiterated this rule and in doing so emphasized its value in preventing multiple recoveries by plaintiff corporations and plaintiff shareholders, employees, and suppliers. *Mid–State Fertilizer v. Exchange National Bank*, 877 F.2d 1333, 1335–1336 (7th Cir.1989). As this Court cautioned in *Mid–State Fertilizer*, RICO with its treble damages provision is not a proper method to revise bankruptcy court judgments:

> Recovery by the firm, followed by division according to entitlements, is especially important when the firm has landed in bankruptcy. Suits by shareholders, guarantors, and the like may well be efforts to divert the debtor's assets—to pay off one set of creditors ... while keeping the proceeds out of the hands of the firm's other creditors. 877 F.2d at 1336.

██ The predicate acts specified in Count I all had the same end—to reduce Central's verdict unlawfully. Whatever damage was caused according to the amended complaint was damage done to Central. The standing rule that stockholders may not bring individual claims under RICO for diminution in the value of the corporation prevails in all the Circuits that have considered the matter. *Flynn, supra; Adams–Lundy v. Ass'n of Professional Flight Attendants*, 844 F.2d 245, 250 (5th Cir.1988); *Warner v. Alexander Grant & Co.*, 828 F.2d 1528, 1530 (11th Cir.1987); *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 29–30 (1st Cir.1987); *Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir.1986), certiorari denied, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582; *Warren v. Manufacturers*

*National Bank of Detroit*, 759 F.2d 542, 544–545 (6th Cir.1985). Therefore Thomas Cummings as an officer of Central Ice Cream and his wife as a "substantial" stockholder thereof cannot maintain a RICO action based on the injury to Central Ice Cream.

While Count I also asserts that McDonald's influenced Borden, Inc. to cancel an employment contract with Thomas Cummings, this was not caused by the alleged predicate acts.[3] The predicate acts—described as extortion (in violation of the Hobbs Act, 18 U.S.C. § 1951), intimidation (Illinois Intimidation Statute, Ill.Rev.Stat., ch. 38, ¶ 12–6), and obstruction of justice (18 U.S.C. § 1503)—all concerned settlement of Central's state court lawsuit against McDonald's. Since the predicate acts were directed at Central's recovery in the ongoing litigation, Mr. Cummings' Borden injury was not by reason of a violation of RICO, that is, the injury was not harm caused by the predicate acts. See, *e.g., Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496–497, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). His loss was insufficient for RICO standing. Read even in its most favorable light, the amended complaint portrays Mr. Cummings' loss of employment opportunity as an indirect result of a campaign against Central.

Plaintiffs seek to evade the rule against derivative RICO suits in part by arguing that because Central is a close corporation, a "Cummings family company," the distinction between a direct and a derivative injury is blurred in this case. See Plaintiffs' Br. at 3, 27–30. To the contrary, various stockholders have opposed the Cummingses' settlement views. 59 B.R. at 483–484. None has joined in this action. The close corporation argument was apparently not even made below, Defendants' Br. at 20, and comes too late. No serious attempt has been made to show that Central was truly a close corporation, in which stock is held in few hands and rarely bought or sold. See 1 F. O'Neal & R. Thompson,

---

**3.** Predicate acts are the offenses defined as "racketeering activity" in 18 U.S.C. § 1961(1). The alleged predicate acts appear in paragraphs 48–50 and 54 of Count I of the amended complaint.

**1180**

O'Neal's Close Corp., § 1.02 at 2–3 (3d Ed. 1988).

Nothing in *Matter of Central Ice Cream Co.*, 836 F.2d 1068 (7th Cir.1987), supports plaintiffs' claim that they may pursue the RICO suit in their own name. There it was noted that stockholders may litigate the question of the adequacy of a settlement in a bankruptcy proceeding where the bankruptcy trustee does not adequately represent their interests. 836 F.2d at 1073. The present complaint contains no such allegation. Our 1987 opinion does not support the proposition that corporate stockholders or officers have standing to pursue a RICO claim for an injury to the corporation.

■ Likewise, the requirement that RICO injury be shown "to his business or property," 18 U.S.C. § 1964(c), would not permit the Cummingses to recover for personal injuries as claimed in Count I. *Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir. 1988), rehearing denied en banc, 851 F.2d 1423, certiorari denied, —— U.S. ——, 109 S.Ct. 531, 102 L.Ed.2d 562 (no recovery permitted under RICO for economic aspects of personal injuries inflicted by predicate acts involving murder); *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1169 (3d Cir.1987) (citing *Reiter v. Sonotone*, 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931, for dicta that words in Clayton Act identical to RICO provision preclude recovery for personal injuries).

Because this RICO claim could only be brought by Central, Count I was rightly dismissed.

## II. Civil Rights

■ Count II of the amended complaint is based on the alleged violation of the Cummingses' civil rights under 42 U.S.C. §§ 1985(2) and 1986. Passed as part of the Ku Klux Klan Act of 1871, Section 1985(2) proscribes the intimidation of witnesses in a federal court action.[4] Section 1986 enforces Section 1985 by imposing liability on persons neglecting or refusing to prevent violations of that Section. The essence of this Count is that the defendants attempted to influence Thomas Cummings' testimony before the bankruptcy court with respect to its approval of the proposed settlement. Based on these provisions, plaintiffs seek $54 million in actual damages and $225 million in punitive damages.

Like the RICO count, the civil rights claim also requires a standing analysis. As the district judge recognized, 698 F.Supp. at 1396–1397, remedial Sections 1985(3) and 1986 have been held to give monetary relief only to a "party" and not a mere witness such as Mr. Cummings.[5] *Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir.1988); *David v. United States*, 820 F.2d 1038 (9th Cir. 1987). This interpretation is supported by the specific language of Sections 1985(3) and 1986, which shows that Congress intended to provide a damage remedy only for litigants whose right to pursue a claim in federal court has been hindered by a conspiracy or by "neglect or refusal" to aid in the prevention of the conspiracy. Otherwise the term "witness" would have been contained in those remedial provisions.

We need not rest on a literal construction of "party" in Sections 1985(3) and 1986, however, because both limit liability to one who has been "injured" or "deprived." Thomas Cummings testified fully at the bankruptcy proceeding and used that op-

---

**4.** The first clause of Section 1985(2) provides in relevant part:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, *any party or witness* in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such *party or witness* in his person or property on account of his having so attended or testified,.... (emphasis added).

This subparagraph does not provide a cause of action for violations thereof.

**5.** Section 1985(3) states:

> [I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do ... any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property ... *the party so injured or deprived* may have an action for the recovery of damages occasioned by such injury or deprivation against any one or more of the conspirators. (emphasis added).

Section 1986 similarly accords damage relief only to a "party injured" (or his legal representative).

portunity for a spirited attack on the proposed settlement; he has done so again with vigor in this suit. There has been no allegation that he was in fact hampered from testifying "freely, fully, and truthfully," in the words of Section 1985(2), or because of any "neglect or refusal" by defendants in the words of Section 1986. Plaintiffs have simply not pointed to an injury or deprivation within the scope of Section 1985 or 1986. *Rutledge v. Arizona Board of Regents*, 859 F.2d 732, 735 (9th Cir.1988) ("Even if potential witnesses to [plaintiff's] federal action were intimidated, such intimidation had no effect on his ability to present a case in federal court."); *Brown v. Chaffee*, 612 F.2d 497, 502 (10th Cir.1979).

### III.  Fair Credit Reporting Act

Count III is the only Count involving Richard Rylewicz, the original plaintiff and the Cummingses' personal accountant. He asserts that in February 1984 all the defendants requested a consumer report about him, under false pretenses, for use in defending the Central Ice Cream suit. The district court held Count III was barred by the two-year statute of limitations in 15 U.S.C. § 1681p against the three defendants not sued until June 2, 1986, but not barred against defendants Beaton Services, Ltd., United States Security Services Corporation, and Financial and Technical Investigations, Inc. The court's reason for continuing the action as to those three defendants was that Rylewicz's original complaint was filed against them on December 20, 1985, and was thus timely.

■ Within the tolling provision of this statute, Congress included a specific exception for the case of a material and willful misrepresentation by a defendant regarding "information required ... to be disclosed" under the statute that is material to the defendant's liability. 15 U.S.C. § 1681p. "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Construction Co.*, 446 U.S. 608,

616–617, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980). Thus Rylewicz cannot successfully argue that equitable tolling applies to save his suit against the subsequent defendants. *Houghton v. Insurance Crime Prevention Institute*, 795 F.2d 322, 325 (3d Cir.1986). We agree with the Third Circuit that an equitable tolling or discovery exception may not be read into the statute. Since the Act did not require the information in the report to be disclosed to Rylewicz, the only tolling provision in Section 1681p was expressly inapplicable, and the statute of limitations must be followed in accordance with the congressional directive.

■ Although when filing his original complaint Rylewicz may have had a "lack of knowledge of the proper party," that factor does not permit an amendment to relate back under Rule 15(c)(2) of the Federal Rules of Civil Procedure. Such an argument misconstrues the mistake requirement of Rule 15(c)(2). *Norton v. Intern'l Harvester Co.*, 627 F.2d 18, 22 (7th Cir.1980); *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir.1980). Since the original three defendants have not appealed, the Count III action against them is still viable.

### IV.  Breach of Contract

■ Neither of defendants' briefs contains an argument in support of pendent Count IV against McDonald's Corporation. That Count asserts that the June 20, 1985, settlement agreement awarding $4 million to the Cummingses and their attorneys was breached by the July 23, 1985, amended settlement agreement approved by the bankruptcy court on October 2, 1985. Jurisdiction over this Count was relinquished by the district court because the federal claims against McDonald's had been dismissed. This was the proper course. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1178 (7th Cir. 1987).

The judgment dismissing Counts I, II, and IV of the amended complaint and dis-

1182

missing Count III except as to the three original defendants[6] is affirmed.

**6.** The defendants remaining under Rylewicz's Count III are United States Security Services Corporation, Beaton Services, Ltd., and Financial and Technical Investigations, Inc.