**Shia BEN–HUR, D.V.M., Plaintiff,**

**v.**

**EQUIFAX INFORMATION SERVICES, INC., and The Mutual Life Insurance Company of New York, Defendants.**

No. 96–C–243.

United States District Court, E.D. Wisconsin.

Aug. 28, 1997.

Ben–Hur, pro se.

Edward W. Schwartz, Ross & Hardies, Chicago, IL, for Equifax.

Kevin S. Thompson, Madison, WI, for Mutual Life Ins. Co. of New York.

## DECISION AND ORDER

CALLAHAN, United States Magistrate Judge.

### BACKGROUND

On March 5, 1996, the plaintiff Shia Ben–Hur, D.V.M., ("Ben–Hur") filed a complaint, *pro se*, against defendants Equifax Information Services, Inc., ("Equifax") and The Mutual Life Insurance Company of New York ("Mutual of New York"), alleging that the defendants violated the provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* In lieu of filing an answer to the complaint, the defendants each filed a motion to dismiss the complaint for failure to state a claim, pursuant to 12(b)(6) Fed. R.Civ.P. On June 5, 1996, this court issued a decision and order in which it denied the defendants' motions to dismiss.

Thereafter, on July 1, 1996, Ben–Hur filed his first amended complaint. The first amended complaint, like the original complaint, alleged that the defendants violated the provisions of FCRA. Each of the defendants filed answers in which they asserted, inter alia, various affirmative defenses.

On August 28, 1996, a scheduling conference was conducted. At that time, an order was entered setting a discovery cutoff date of January 1, 1997. The scheduling order also set February 15, 1997, as the date by which the parties could file dispositive motions. Now, both the plaintiff and the defendants have, consistent with this court's scheduling order, filed motions for summary judgment arguing that the undisputed material facts demonstrate that they are each entitled to judgment in their favor. The parties have fully briefed their motions. Thus, they are ready for resolution. This court has jurisdiction over this action pursuant to the provision of 15 U.S.C. § 1681p and 28 U.S.C. § 1331. All parties have consented to proceed before this court in accordance with 28 U.S.C. § 636(c) and Rule 73(b) Fed.R.Civ.P. Consequently, this court has jurisdiction to resolve the parties' motions.

### FACTS

■ In support of their positions on their respective motions for summary judgment, the parties have filed extensive briefs, as well as affidavits and other documentary material.[1] Distilled to their essence, the undisputed material facts in this action show the following.

In 1989, Ben–Hur was working as a veterinarian. In early 1989, he had group disability coverage through a professional association. Sometime later in 1989, the professional association switched insurance carriers for the disability coverage to defendant Mutual of New York. The disability coverage through Mutual of New York became effective December 1, 1989.

In January 1990, Ben–Hur suffered a heart attack. Sometime thereafter he made a claim for benefits under the Mutual of New York policy. However, on January 16, 1990, a representative of Mutual of New York sent a letter to Ben–Hur which stated as follows:

Dear Dr. Ben–Hur:

Thank you for your application for coverage under the AVMA program. A final underwriting decision is not possible at this time because additional information is needed.

An inspection report will be required. Equifax Services, Inc., is the company that will be contacting you shortly to arrange for an appointment at a time and location convenient for you.

Your cooperation in this matter is appreciated.

Sincerely,

Deloris Arnett.

Mutual of New York eventually denied Ben–Hur's claim for benefits. By letter dated November 5, 1990, Mutual of New York informed Ben–Hur that he would not be receiving the disability benefits based, in part, on the Equifax investigation and report. The November 5, 1990, letter stated as follows:

Dear Dr. Ben–Hur:

Your application and claim files have been referred to my attention because of information developed in the claim review process.

Attached is a copy of your application for Long Term Disability Income Benefits dated November 22, 1989. By answering "yes" to question no. 1, you indicated that for the past 30 days you have been performing all the duties of your occupation on a full-time basis at your usual place of business.

---

1. In support of their motions for summary judgment, the defendants did not file proposed findings of fact pursuant to Local Rule 6.05 (E.D.Wis.). And because they did not, Ben–Hur has objected to this court's consideration of their motions. However, Ben–Hur's objection is not well-founded. He is proceeding *pro se*. Although Local Rule 6.05 does not seem to prohibit a party in a *pro se* case from filing proposed findings of fact, that rule does not require proposed findings of fact be submitted in a case in which a party appears *pro se*. To the contrary, Rule 6.05, in pertinent part, provides that: "Motions for summary judgment shall comply with Rule 56 of the Federal Rules of Civil Procedure and Rule 6.01 of these rules. In addition, *with the exception of social security reviews and cases in which a party appears pro se*, the following requirements must be met." (Emphasis supplied). Thus, the fact that the defendants did not submit proposed findings of fact along with their respective motions for summary judgment does not render their motions improperly before this court.

Because this question had been answered "no" on your application for Major Medical coverage dated September 1, 1989, and the answer on your later application had been altered, the Plan Administrator requested an investigation by Equifax Services. Their report stated that you had no earned income. When you were questioned about this by the Plan Administrator, you submitted a letter dated April 3, 1990, stating that you were employed by the Animal Care Center, Inc., from May 1 to December 1, 1989, and that you received compensation exceeding $35,000.00 during that period. Based on your representations, disability income coverage was approved effective December 1, 1989. In the course of evaluating your claim, a MONY representative personally visited the North Shore Animal Hospital to examine your employment and payroll records for the period including the dates of your application and disability. The present owners of the practice were unable to produce employment, payroll, or any other records in support of your claim that you were employed there for more than 25 hours weekly between May 1, 1989, and December 1, 1989.

In order to qualify for AVMA disability insurance under the terms of the 1989 special enrollment offer for transferring WVMA insureds, you must have been employed in a gainful occupation at the time of the application for 25 or more hours per week. Since you have been unable or unwilling to furnish verifiable evidence of such employment, it appears that you were not eligible for the transfer when you applied in November, 1989. Consequently, your claim for benefits under the AVMA program must be denied, and the coverage is subject to rescission (cancellation as of its effective date).

Enclosed is MONY's check for $620.56 refunding with interest all premiums you have paid for the rescinded coverage. Please negotiate this check promptly, sign the enclosed Acknowledgment of Rescission form and return one copy in the enclosed envelope.

If you believe that any of our information is incorrect, or have additional information which you believe might alter our decision, please write to me promptly and explain fully. In any event, please let me hear from by November 26, 1990.

As a result of his being denied benefits, Ben–Hur repeatedly threatened Mutual of New York with litigation during 1990, 1991 and 1992. He also had a lawyer communicate with Mutual of New York about the matter. However, Ben–Hur did not file a civil action against Mutual of New York until he filed the instant action on March 5, 1996.

As stated, the instant action claims a violation of the Fair Credit Reporting Act. In that connection the plaintiff alleges that on August 15, 1995, September 21, 1995, and October 28, 1995, he requested a copy of the Equifax report that had been filed with Mutual of New York. Neither Mutual of New York nor Equifax, at least prior to the institution of this action, had provided a copy of the report to Ben–Hur.

In essence, Ben–Hur claims he wanted a copy of the report because it contained incorrect and fraudulent statements by a Mrs. Heidi Stern, whose husband had purchased Ben–Hur's veterinary business in may, 1989, and had allegedly employed him after the sale. The allegedly "incorrect and fraudulent" statements by Mrs. Stern concern whether Ben–Hur was working more than 25 hours per week at the time he applied for disability benefits from Mutual of New York.

The type of proof that Mutual of New York required to substantiate whether Ben–Hur had worked more than 25 hours per week, such as employment and payroll records, W–2 and 1099 forms, or check stubs, could only be obtained from the Sterns, who, according to Ben–Hur, repeatedly refused to supply him with that information. According to Ben–Hur, their refusal to turn over such information may have been due in part to the fact that he was in litigation with them during 1990.

According to Ben–Hur, he suspected, back in 1990, that the Sterns had provided inaccurate information to Equifax in order to hurt him. Ben–Hur claims that the Sterns were engaged in a "misrepresentation of the facts" and a "deliberate deception" concerning his

employment status at the veterinary clinic. Despite this, Ben–Hur did not request a copy of the report from either Mutual of New York or Equifax until 1995. However, he insists that, had he received a copy of the Equifax report when he first requested it in the fall of 1995, even though five years after it was prepared, he would have been able to get the Sterns to admit their alleged falsehoods, force them to issue the documentation he needed to substantiate his employment status, and then convince Mutual of New York to provide him disability benefits.

## STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is no longer disfavored under the Federal Rules. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986) ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole which are designed to 'secure the just, speedy and inexpensive determination of every action.'" It "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial times for those that really do raise genuine issues of material fact.") *United Food and Commercial Workers' Union Local No. 88 v. Middendorf Meat Co.,* 794 F.Supp. 328, 330 (E.D.Mo.1992).

Rule 56(c), Fed.R.Civ.P., requires a district court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The mere existence of some factual dispute does not defeat a summary judgment motion: the requirement is that there be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.*

The party moving for summary judgment bears the initial burden of showing that there are no material facts in dispute, and that judgment should be entered in his favor. *Hannon v. Turnage,* 892 F.2d 653, 656 (7th Cir.), *cert. denied,* 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990). A party moving for summary judgment may satisfy this initial burden by pointing to the adverse party's failure to introduce sufficient evidence to support each essential element of the cause of action alleged. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53.

A party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed. R.Civ.P. *See also, Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53 and *Becker v. Tenenbaum–Hill Associates, Inc.,* 914 F.2d 107, 110 (7th Cir.1990). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Rule 56(e), Fed.R.Civ.P. And a party to a lawsuit may not "... ward off summary judgment with an affidavit or deposition based on rumor or conjecture. 'Supporting and opposing affidavits shall be made on personal knowledge, ...'" *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572–73 (7th Cir.1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Griffin v. City of Milwaukee,* 74 F.3d 824, 826–27 (7th Cir.1996); *Johnson v. Pelker,* 891 F.2d 136, 138 (7th Cir.1989). "However, we are not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). Moreover, neither "the mere existence of some alleged factual dispute between the parties," *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2510, nor the demonstration of "some metaphysical doubt as to the mate-

rial facts," *Matsushita Electric,* 475 U.S. at 586, 106 S.Ct. at 1356, will sufficiently demonstrate a genuine issue of material fact. In that regard, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. *See also, Forman v. Richmond Police Department,* 104 F.3d 950 (7th Cir.1997).

The question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

## ANALYSIS

Before turning to the arguments of the parties, it might be helpful to review my decision of June 5, 1996. In that decision, I explain, to some limited degree, the history and purpose of the Fair Credit Reporting Act.

In 1970, congress passed the Fair Credit Reporting Act. 15 U.S.C. § 1681, *et seq.* Recognizing the necessity of credit reporting agencies in our modern economy, Congress sought through the FCRA to curb some of the abuses inherent in the industry. To that end, Congress enacted the FCRA which seeks to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner. *See,* 15 U.S.C. § 1681(b).

The FCRA focuses on the rights of consumers by regulating the practices of credit agencies and the recipients of their reports. 15 U.S.C. § 1681. Typically, the Act's safeguards are invoked when a consumer applied for credit, insurance or employment. 15 U.S.C. § 1681(a). In many instances the Act requires an entity dealing with a consumer under one of the above-mentioned circumstances to disclose to the consumer that the party is going to make an investigation or procure information from a credit reporting agency about the consumer for use in considering the individual's application. 15 U.S.C. § 1681d. Significantly, the Act requires that whenever credit, insurance or employment is denied a consumer, or an adverse decision is made concerning a consumer's existing status on the basis of information contained in a credit report, the party that relies on the report must inform the consumer that the denial of his application, or the adverse action, resulted in whole or in part from the information contained in the report. The party relying on the report must also supply the consumer with the name and address of the reporting agency that provided the information. 15 U.S.C. § 1681n. Upon request and identification, the reporting agency is required to divulge the information in its files concerning the interested consumer. 15 U.S.C. § 1681g. If a consumer reasonably disputes the completeness or accuracy of the information contained in his or her file, the consumer may communicate this disagreement to the reporting agency, thereby invoking the agency's statutory duty to reinvestigate. 15 U.S.C. § 1681i. If such an investigation fails to resolve the dispute, the consumer may file a statement contesting the information which is incorporated into the consumer's file. *Id.* In addition to the aforementioned safeguard, the Act protects the consumer generally by requiring that obsolete information not be included in consumer reports, § 1681c, that reporting agencies follow reasonable procedures intended to assure the maximum possible accuracy of the information contained in reports, § 1681e, and that the confidentiality of the information be maintained by limiting the parties with access to reports to those with a legitimate interest in obtaining the information. § 1681b. Finally, to assure enforcement, the Act provides for both penal and civil remedies, including attorneys' fees, for various forms of noncompliance. §§ 1681n, 1681p, and

1681q. *See, Hovater v. Equifax, Inc., supra,* 823 F.2d at 417.

In their previously filed motions to dismiss, the defendants had argued that the report which had been prepared by Equifax was neither a "consumer report" nor an "investigative consumer report" under the Act. Specifically, they argued that the report was not requested for use in connection with the underwriting of the policy under which Ben–Hur sought coverage but, rather, was requested for evaluating Ben–Hur's claim under the then existing insurance policy for AVMA members. I denied the defendants' motions because the previously mentioned letter of November 5, 1990, written on the letterhead of Joseph C. Keown, Director, Association Underwriting, Mutual of New York, suggested that the report may have been used, not only to determine the plaintiff's entitlement to benefits, but also to retroactively determine the plaintiff's eligibility for the disability coverage. I noted that "[w]hether the use of the report to make such retroactive determination of the plaintiff's eligibility for coverage (if in fact it was used for such purpose), would convert the report into a 'consumer report' or an 'investigative consumer report' for purposes of the FCRA is a question that I am not prepared to address or decide at this point, (much less whether, even it was so used, the defendants violated the FCRA in any respect). But the question causes me enough concern that I believe granting the defendants' motions to dismiss at this point would be injudicious." (June 5, 1996, Decision and Order, pp. 11–12)

It now appears that the question of whether the report was a "consumer report" or an "investigative consumer report" is one that need not be resolved. This is because the defendants' motions for summary judgment are based on other grounds. And for the reasons expressed below, I am persuaded that the undisputed material facts show the defendants to be entitled to summary judgment dismissing the plaintiff's action against them.

### MUTUAL OF NEW YORK'S MOTION FOR SUMMARY JUDGMENT

■ There are several grounds upon which Mutual of New York bases its motion for summary judgment. First, Mutual of New York argues that Ben–Hur's claims are time barred under the Act. Second, Mutual of New York argues that there are no evidentiary facts to support a claim that it violated any of the arguably relevant sections of the Act.

FCRA has a two-year statute of limitations. Specifically, 15 U.S.C. § 1681p provides that:

> An action to enforce any liability created under this title [15 U.S.C. §§ 1681 *et seq.*] may be brought in any appropriate, United States District Court without regard to the amount in controversy or in any other court of competent jurisdiction within two years from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required under this title [15 U.S.C. §§ 1681 *et seq.*] to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this title [15 U.S.C. §§ 1681 *et seq.*], the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

The allegations asserted in the plaintiff's amended complaint reveal one thing for sure: the facts which gave rise to his allegations occurred in 1990. Indeed, it was at that time that Equifax prepared, and Mutual of New York relied upon, the report which is at the core of his claim. Yet, Ben–Hur did not file this action until March, 1996. The question thus is whether or not this action was filed in a timely fashion.

Obviously, Ben–Hur did not file this action "within two years from the date on which liability [arose]." If his claim is based on Mutual of New York's having allegedly procured the report from Equifax without properly disclosing such fact to Ben–Hur in violation of 15 U.S.C. § 1681d, such liability arose three days after the report was first requested by Mutual of New York. *See* U.S.C. § 1681d(a)(1)(A). If his claim is based on Mutual of New York's having allegedly used

the Equifax report to deny Ben–Hur insurance without so advising him and without supplying him with the name and address of Equifax in violation of 15 U.S.C. § 1681m, such liability arose certainly no later than November 5, 1990. The bottom line is that by the time he filed this action in March, 1996, the two-year time bar had long come and gone. And the only way this two-year time bar could have been tolled is if Mutual of New York had "materially and willfully misrepresented any information required ... to be disclosed to [Ben–Hur] and the information so represented [was] material to the establishment of [Mutual of New York's] liability ..." to Ben–Hur. In such a case, the action could have been "brought at any time within two years after discovery by [Ben–Hur] of the misrepresentation." 15 U.S.C. § 1681p. At his deposition, Ben–Hur testified that he had no knowledge or information that Mutual of New York materially or willfully misrepresented any information to him. Thus, it would appear that Ben–Hur cannot benefit from the tolling provision of § 1681p.

However, he argues that he "first learned of [his] rights with regards to the Equifax report[s] from a third-party source in the Summer of 1995 ..." (First Amended and Supplemental Affidavit in Support of Motion for Summary Judgment dated April 23, 1997, ¶ 11). In other words, Ben–Hur attempts to avoid the impact of 15 U.S.C. § 1681p by arguing that he was not aware of his rights until 1995 and because he filed this action within two years of his becoming aware of his rights, the action was timely filed. Ben–Hur's argument must be rejected.

■ There is no general discovery rule or equitable tolling to extend the time to file an action under FCRA based on lack of knowledge. This was made clear by the Seventh Circuit Court of Appeals in *Rylewicz v. Beaton Services Ltd.*, 888 F.2d 1175 (7th Cir. 1989). In that case, the court stated:

Within the tolling provision of this statute, Congress included a specific exception for the case of a material and willful misrepresentation by a defendant regarding "information required ... to be disclosed" under the statute that is material to the defendant's liability. 15 U.S.C. § 1681p.

"Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Construction Company*, 446 U.S. 608, 616–617, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980). Thus, Rylewicz cannot successfully argue that equitable tolling applies to save his suit ...

*Rylewicz*, 888 F.2d at 1181.

As stated, there is no evidence that Mutual of New York materially and willfully misrepresented any information required to be disclosed to Ben–Hur. Thus, § 1681p's tolling provision does not apply. And because the report from which Ben–Hur's claims stem was prepared in 1990, the conclusion that Ben–Hur's claim against Mutual of New York is time barred under the Act is inescapable. Thus, on this ground alone Mutual of New York's motion for summary judgment must be granted.

Ben–Hur's amended complaint is less than clear on precisely what sections of FCRA he claims Mutual of New York violated. As Mutual of New York notes in its brief, the plaintiff's amended complaint alleges that, "[p]laintiff invokes jurisdiction under the Fair Credit Reporting Act Public Law 91–508, 1970 Sec. 606(A)(B) disclosure of investigative consumer report also under Sec. 616 Civil Liberty for Willful Noncompliance..." (First Amended Complaint, ¶ 4). This hardly defines with any precision the claim that Ben–Hur is making against Mutual of New York. And his deposition provided little further elucidation. Nevertheless, Mutual of New York, consistent with summary judgment practice and law has examined those sections of FCRA that might possibly pertain to Mutual of New York and has pointed to Ben–Hur's "failure to introduce sufficient evident to support each essential element of the cause of action alleged." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53.

■ Mutual of New York first examines whether the facts show that Ben–Hur could arguably prevail on a claim under 15 U.S.C.

§ 1681d. That section provides, in part, that:

(a) A person may not procure or cause to be prepared an investigative consumer report on any consumer unless—

(1) it is clearly and accurately disclosed to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, and mode of living, whichever are applicable, may be made, and such disclosure

(A) is made in writing mailed, or otherwise delivered, to the consumer, not later than three days after the date on which the report was first requested, and

(B) includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of the section.

As Mutual of New York points out in its brief, Ben–Hur has admitted that in January 1990 Mutual of New York notified him in writing that an investigation was going to be conducted by Equifax. Ben–Hur further testified that Equifax interviewed him on a couple of occasions. Such being the case, as early as 1990, Ben–Hur was aware of Equifax's investigation of him. Finally, and perhaps most tellingly, Ben–Hur testified at his deposition that he has no evidence that the required notification was not sent to him within three days after the report was requested. Because Ben–Hur bears the burden of proving each essential element of the cause of action alleged, and because he has no evidence that notification was not sent to him within three days after the report was requested, he cannot prevail on a claim alleging a violation of 15 U.S.C. § 1681d.

■ But what about 15 U.S.C. § 1681m? That section provides:

(a) Whenever credit or insurance for personal, family, or household purposes, or employment involving a consumer is denied or the charge for such credit or insurance is increased, either wholly or partly because of information contained in a consumer report from a consumer reporting agency, the user of the consumer report shall so advise the consumer against whom such an adverse action has been taken and supply the name and address of the consumer reporting agency making the report.

To be sure, Mutual of New York denied Ben–Hur's claim for disability benefits. This denial was based, at least in part, on information in the Equifax report. As stated earlier in this decision, the question of whether the Equifax report was a "consumer report" is one that this court need not resolve. But even assuming it was a consumer report, Mutual of New York argues that, by letter dated November 5, 1990, it informed Ben–Hur that its denial of benefits was based, in part, on the information from Equifax. Such being the case, Mutual of New York argues that it complied with § 1681m.

Whether Mutual of New York strictly complied with the provision of § 1681m is questionable. That section requires the user of the report to advise the consumer against whom an adverse action has been taken to supply the name *and address* of the consumer reporting agency. There is no evidence that Ben–Hur was supplied with Equifax's address. Be that as it may, any liability that might have arisen from such fact would have arisen in 1990, i.e., well more than two years before Ben–Hur filed this action. For the reasons expressed earlier in this decision, that fact is fatal to his claim.

■ Finally, Mutual of New York argues that, if allowed to go forward on his claim, Ben–Hur could not prove a violation of 15 U.S.C. § 1681g. That section provides,

Every consumer reporting agency shall, upon request and proper identification of any consumer, clearly and accurately disclose to the consumer:

(1) The nature and substance of all information (except medical information) in its files on the consumer at the time of the request.

(2) The sources of the information . . .

(3) The recipients of any consumer report on the consumer which it has furnished—

(A) For employment purposes within the two year period preceding the request, and

(B) For any other purpose within the six month period preceding the request.

According to Mutual of New York, Ben–Hur would be unable to prevail on any such claim against Mutual of New York precisely because Mutual of New York is not a "consumer reporting agency" as defined in 15 U.S.C. 1681a(f). That section defines a "consumer reporting agency" as:

Any person which, for monetary fees, due or on a cooperative non-profit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, in which it uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

At his deposition, Ben–Hur testified that he had no knowledge or information that Mutual of New York engages in the activities set forth in the definition of a "consumer reporting agency." Nor has he alleged that Mutual of New York is a "consumer reporting agency." Indeed, the very nature of his allegations would suggest the opposite; that is to say, Mutual of New York is not a consumer reporting agency but is, rather, a user of a consumer report prepared by a consumer reporting agency. Thus, Mutual of New York argues, and I agree, that summary judgment dismissing any claim arguably asserted against it by Ben–Hur under the provisions of 15 U.S.C. § 1681g is appropriate.

## EQUIFAX SERVICE INC.'S MOTION FOR SUMMARY JUDGMENT

The arguments presented by Equifax in support of its motion for summary judgment are different than those advanced by Mutual of New York. However, and for the reasons expressed below, the result is the same— dismissal of the plaintiff's action.

Equifax argues that this action is really all about Mutual of New York's decision to deny the plaintiff's disability insurance claim which decision was based, in turn, on the plaintiff's inability, to obtain from his alleged former employers, Heidi and Allen Stern, (who are not parties to this action), the proof of full time employment that Mutual of New York required before it would agree to pay his claim. In its view, "Equifax has been dragged into the middle of a stale insurance coverage dispute involving plaintiff, defendant Mutual Life and the Stems." (Memorandum in Support of Defendant Equifax Services Inc.'s Motion for Summary Judgment, p. 1). Equifax may have a point. However, the fact remains that the plaintiff has asserted a claim against Equifax under the provisions of 15 U.S.C. § 1681 et seq., and it is therefore necessary to examine the facts in order to determine whether Ben–Hur has introduced sufficient evidence to support each essential element of the claim he has alleged against Equifax. Anderson, 477 U.S. at 256, 106 S.Ct. at 2514; Celotex, 477 U.S. at 323–24, 106 S.Ct. at 2552–53. If not, Equifax is entitled to summary judgment dismissing Ben–Hur's claim against it.

■ As was the case with his claim against Mutual of New York, it is not entirely clear what Ben–Hur's claim is against Equifax because he does not identify in his complaint, in his amended complaint, or in his summary judgment submissions any particular section of FCRA upon which he is relying in asserting a claim against Equifax. What is entirely clear, however, is that his claim is founded upon the report prepared by Equifax at the request of Mutual of New York. It is this report that, in the view of Ben–Hur, contained "incorrect and fraudulent" statements by Ms. Heidi Stern, whose husband had purchased the plaintiff's veterinary business in May of 1989 and allegedly employed plaintiff after the sale.

The facts demonstrate that it was well after Mutual of New York denied Ben–Hur benefits under his group disability insurance policy based, at least in part, on the Equifax report, that Ben–Hur requested that Equifax provide him a copy of the report. Specifically, that request was made in August, 1995,

well more than five years after the report had been prepared.

In paragraph 4 of his amended complaint, Ben–Hur alleges:

4. Plaintiff invokes jurisdiction under The Fair Credit Reporting Act Public Law 91–508, 1970, Sec. 606(A)(B) Disclosure of Investigative Consumer Report also under Sec. 616 Civil Liberty for willful non-compliance and its implementing regulations pursuant to 28 U.S.C. 1335, 1397, 2361 Federal Rule 18 and 20.

Therefore, it would appear that Ben–Hur may seek to hold Equifax liable under FCRA 606(A)(B), i.e. 15 U.S.C. § 1681d. To reiterate, that section provides:

(a) A person may not procure or cause to be prepared an investigative consumer report on any consumer unless—

(1) it is clearly and accurately disclosed to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics and mode of living, whichever are applicable, may be made, and such disclosure: (A) is made in a writing mailed, or otherwise delivered, to the consumer, not later than 3 days after the date on which the report was first requested, and (B) includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section; or

(2) the report is to be used for employment purposes for which the consumer has not specifically applied.

(b) Any person who procures or causes to be prepared an investigative consumer report on any consumer shall, upon written request made by the consumer, within a reasonable period of time after the receipt by him of the disclosure required by subsection (a)(1) [shall] make a complete and accurate disclosure of the nature and scope of the investigation requested. This disclosure shall be made in a writing mailed, or otherwise delivered, to the consumer not later than 5 days after the date on which the request for such disclosure was received from the consumer or such report was first requested, whichever is the later.

15 U.S.C. §§ 1681d(a) and (b).

There is no dispute that Equifax prepared the report at issue at the request of Mutual of New York. Such being the case, if there is any entity which could face liability under 15 U.S.C. § 1681d(a) or (b) it is Mutual of New York, not Equifax. This is because this particular provision of FCRA applies only to the party which requests preparation of the report, not the entity which prepared it. *Ippolito v. WNS, Inc. and Equifax Services, Inc.*, 636 F.Supp. 471, 473–474 (N.D.Ill.1986), affirmed in part, reversed in part on different grounds, 864 F.2d 440 (7th Cir.1988); *Henry v. Forbes*, 433 F.Supp. 5, 10 (D.Minn. 1976). Thus, to the extent that Ben–Hur seeks relief against Equifax under the provisions of 15 U.S.C. § 1681d(a) or (b) such effort must fail as a matter of law.

■ To reiterate, it is not entirely clear under which particular section of FCRA Ben–Hur seeks relief against Equifax. But it seems reasonable to construe his amended complaint and submissions filed in connection with these motions for summary judgment as perhaps advancing a claim against Equifax for violating the provisions of 15 U.S.C. § 1681g. That section provides:

(a) Every consumer reporting agency shall, upon request and proper identification of any consumer, clearly and accurately disclose to the consumer:

(1) The nature and substance of all information (except medical information) in the files on the consumer at the time of the request.

(2) The sources of the information; except that the sources of information acquired solely for use in preparing an investigative consumer report and actual use for no other purpose need not be disclosed

. . . . . .

(3) The recipients of any consumer report on the consumer which it has furnished—

(A) For employment purposes within the 2–year period preceding the request, and

(B) For any other purpose within the 6–month period preceding the request.

15 U.S.C. § 1681g(a).

If any consumer reporting agency or user of information willfully or negligently fails to comply with this section, "any actual damages sustained by the consumer as a result of the failure," punitive damages as the court may allow (in the case of a willful violation), and the costs of the action together with reasonable attorneys fees are recoverable by the consumer, pursuant to the provisions of 15 U.S.C. §§ 1681n and 1681o.

15 U.S.C. § 1681g requires that a consumer reporting agency, upon request and proper identification of any consumer, clearly and accurately disclose to the consumer "[t]he nature and substance of all information (except medical information) in its files on the consumer *at the time of the request ...*" (Emphasis provided). It is undisputed (or at least the plaintiff has not proffered any evidence to counter that proffered by Equifax) that at the time Ben–Hur requested the report, Equifax no longer had any information in its files, much less a copy of the report, concerning the 1990 investigation of Ben–Hur's disability claim. Indeed, the affidavit of Roger L. Harvey, which was filed by Equifax in support of its motion for summary judgment, states:

Roger L. Harvey being duly sworn on oath, states as follows:

1. I am assistant vice-president, claims operations, for Equifax Services, Inc., one of the defendants in the above-captioned lawsuit. I am authorized to make this affidavit on behalf of Equifax Services, Inc, in connection with its motion for summary judgment, and I have personal knowledge of the mat-

ters set forth herein. If sworn as a witness, I can testify competently to the following:

2. The corporate policy of Equifax Services, Inc., is to maintain its files on continuance of disability claims investigations relating to insurance for a period of 13 months after completion of the investigation.

3. I have been advised that, at the request of Mutual Life Insurance Company of New York, Equifax Services, Inc., conducted an investigation and prepared a "Continuance of Disability Report" in August, 1990, related to plaintiff's claim for disability benefits.

4. I have also been advised that plaintiff sought to obtain a copy of the 1990 Equifax report in August, 1995.

5. By August, 1995, pursuant to its corporate document retention policy, Equifax Services, Inc., would not have had in its files any information relating to the 1990 investigation of plaintiff's claim for disability benefits.

The plaintiff has not proffered any evidence to counter the affidavit of Mr. Harvey. Such being the case, Equifax could not have violated the provisions of 15 U.S.C. § 1681g by failing to provide a copy of the report to Ben–Hur when he requested the same in August, 1995, precisely because it did not have the report in its possession any more. And 15 U.S.C. § 1681g only requires that a consumer reporting agency disclose "the nature and substance of all information (except medical information) in its files on the consumer at the time of the request." In light of the foregoing, it is abundantly clear that Ben–Hur's claim under FCRA arising out of Equifax's failure to provide him with a copy of the report when he requested the same in August of 1995 cannot succeed.[2]

---

**2.** The court notes that in June, 1996, Ben–Hur finally received a copy of the Equifax report. The report was filed with the court, under seal, by Mutual of New York. Equifax argues that the plaintiff has failed to offer any evidence indicating how the delay in receiving the report caused him to sustain damages and, for that further

reason, summary judgment is appropriate. However, because I am persuaded the Equifax is entitled to summary judgment on the grounds stated in this decision, I need not decide whether Equifax is entitled to summary judgment on this alternative ground.

## *CONCLUSION*

In my decision and order of June 5, 1996, I denied the defendants' motions to dismiss because it was not clear to me whether the report prepared by Equifax at the request of Mutual of New York was either a "consumer report" or an "investigative consumer report" within the meaning of those terms under FCRA. It still is not clear to me whether the report prepared by Equifax was a report covered by the provisions of FCRA. However, it is not necessary for me to decide that question. Instead, this action must fail because of the reasons expressed above. Specifically, Ben–Hur's claims against Mutual of New York are time barred and Ben–Hur's claims against Equifax cannot succeed as a matter of law. Whether or not a report such as was prepared by Equifax at the request of Mutual of New York relative to Ben–Hur's application for disability benefits was either a "consumer report" or an "investigative consumer report" is an issue the resolution of which must await another day and another case.

Now, therefore, **IT IS ORDERED** that the plaintiff's motion for summary judgment is **DENIED** and the defendants' motions for summary judgment are **GRANTED**. This action is dismissed with prejudice.