T.C. Memo. 1998-274


UNITED STATES TAX COURT


DAVID R. GREEN AND CAROLYN B. GREEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 8933-94, 6564-96,          Filed July 27, 1998.
        26100-96.


<u>W. Kevin Jackson</u>, for petitioners.

<u>S. Mark Barnes</u>, for respondent.


MEMORANDUM OPINION

PAJAK, <u>Special Trial Judge</u>:  These consolidated cases were
heard pursuant to section 7443A(b)(3) of the Code and Rules 180,
181, and 182.  All section references are to the Internal Revenue
Code in effect for the years in issue.  All Rule references are
to the Tax Court Rules of Practice and Procedure.  Respondent

determined the following deficiencies in income tax, addition to tax, and accuracy-related penalties:

| Docket No. | Year | Deficiency | Addition to Tax Sec. 6651(a) | Accuracy-Related Penalty Sec. 6662 |
|---|---|---|---|---|
| 8933-94 | 1991 | $3,466 | --- | --- |
| 6564-96 | 1992 | 3,435 | --- | --- |
|  | 1993 | 2,823 | --- | --- |
| 26100-96 | 1994 | 2,946 | $737 | $589 |
|  | 1995 | 4,860 | --- | 972 |

After concessions by petitioners, including the section 6651 addition to tax, the issues for decision in these consolidated cases are: (1) Whether petitioners are entitled, on the basis of section 104(a)(2), to exclude the entire $36,000 payment, or a portion thereof, that petitioner David R. Green received pursuant to a settlement agreement, and (2) whether petitioners are liable for accuracy-related penalties under section 6662 for taxable years 1994 and 1995.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Salt Lake City, Utah, at the time the petition was filed in docket No. 8933-94; petitioner David R. Green resided in Chandler, Arizona, and petitioner Carolyn B. Green resided in Salt Lake City, Utah, at the time the petition was filed in docket No. 6564-96; and petitioner David R. Green resided in Washington, Utah, and petitioner Carolyn B. Green resided in Salt

Lake City, Utah, at the time the petition was filed in docket No. 26100-96.

On or about June 1, 1980, petitioner David R. Green (petitioner) entered into a general agency contract (the Contract) with Washington National Insurance Co. of Evanston, Illinois (WNIC). Petitioner was authorized to operate as a general agent for WNIC in and around Salt Lake City, Utah. As a general agent, petitioner was to procure, both personally and through sales agents, applications for individual life and health insurance on terms authorized by WNIC. As a general agent, petitioner was also responsible for training and supervising those sales agents of WNIC operating in Utah. To facilitate his activities as a general agent, petitioner formed the Financial Business Corporation (FBC). Sales agents were not employed by petitioner or FBC but rather were affiliated with WNIC.

WNIC unilaterally terminated the Contract in August 1983. In a letter to petitioner dated August 2, 1983, Richard C. Heverly (Heverly), vice president and director of general agencies for WNIC, outlined the reason for the termination of the Contract. Heverly indicated that the Contract was being terminated "for cause". Heverly also indicated that petitioner had failed to adequately perform his duty to "supervise the professional activity and conduct" of the sales agents.

WNIC filed a suit against petitioner and FBC in Federal District Court for the District of Utah (the District Court). In turn, petitioner and FBC filed a suit against WNIC and Washington National Financial Services (WNFS), a related corporation, in the District Court. For convenience and clarity, WNIC and WNFS will be collectively referred to as WNIC. In the breach of contract suit filed by petitioner and FBC against WNIC, tort and tort type claims were alleged. In response to WNIC's Motion in Limine, the District Court limited the presentation in the trial to breach of contract, as explained below. The two cases were consolidated for trial (the District Court Case).

The jury instructions (Jury Instructions) in the District Court Case stated that petitioner was suing WNIC for wrongful termination of his general agency contract. The jury (the Jury) executed a special verdict form. The Jury found that "just cause" did not exist for the termination of the Contract and awarded damages to petitioner in the amount of $159,238 (the Jury Award). The amount of the Jury Award was the amount that an economist who testified in the District Court Case calculated that petitioner would have earned as commissions under the Contract had the Contract not been terminated by WNIC.

The Judgment does not make any reference to an award based on a tort or tort type claim. Aside from the $159,238, the Judgment awarded only amounts of commissions plus interest to

petitioner and FBC under the breach of contract claims. One of the awards of commissions plus interest was made only to petitioner. The Judgment, entered on June 2, 1986, in the total amount of $1,521,628.04 was based on breach of contract claims.

WNIC's insurance carrier appealed the Judgment to the Tenth Circuit Court of Appeals (the Court of Appeals). Petitioner did not appeal the Judgment. Prior to the filing of briefs in the Court of Appeals, the parties entered into a settlement agreement (the Settlement Agreement), effective September 23, 1987. In accord with the Settlement Agreement, petitioner/FBC and WNIC released all claims that the parties to the District Court Case asserted against each other, including all contractual and "extra contractual claims". The Settlement Agreement provided, inter alia: (1) WNIC would make a lump sum payment in the amount of $581,500 to FBC, and (2) WNIC would make guaranteed monthly payments to petitioner in the amount of $3,000 for a period of 240 months ($36,000 per year for 20 years) commencing October 1, 1987. The Settlement Agreement specified that $1,510 of each of the monthly payments would be paid towards satisfaction of the Jury Award. The balance of $1,490 of the $3,000 was not specifically allocated.

Petitioners filed joint Federal income tax returns for 1991, 1992, 1993, 1994, and 1995 (the Returns). On the Returns, petitioners reported annuity income of $36,000 per year. Of this

amount, petitioners reported that $17,880 ($1,490 x 12) was taxable for each year. The remaining $18,120 ($1,510 x 12) for each year attributable to the amount of the payments made during the year in satisfaction of the Jury Award was not reported as taxable.

Respondent determined that the entire $36,000 in payments for each year is taxable.

Petitioners first appeared before this Court with respect to taxable year 1991, in a case conducted under the "small tax case" procedures authorized by section 7463 and Rules 170 through 179. The parties filed cross-motions for summary judgment under Rule 121. The relevant issue there was whether petitioners were entitled, on the basis of section 104(a)(2), to exclude the entire $36,000 payment, or a portion thereof, that petitioner received pursuant to the Settlement Agreement. In Green v. Commissioner, T.C. Summary Opinion 1995-167, we denied petitioners' motion for summary judgment and granted respondent's motion for summary judgment insofar as we concluded that the $18,120, attributable to the amount of the Jury Award, was includable in petitioners' income for 1991. We further concluded that a material fact remained in dispute with respect to the remaining portion of the $36,000 payment, or $17,880, which petitioners initially included in income, but later contended was excludable under section 104(a)(2). We found that the record was

incomplete as to the claims that were the basis for that portion of the Settlement Agreement.

Subsequently, the small tax case designation was removed and the case was processed according to the regular procedures of this Court. Petitioners are now before the Court with respect to taxable years 1991 through 1995. We decline to accept petitioners' request that we revisit the issue in taxable year 1991 which was resolved in Green v. Commissioner, T.C. Summary Opinion 1995-167.

Rule 39 requires a party to plead matters constituting an affirmative defense such as collateral estoppel. Respondent failed to so plead so we address for each of the years 1992 through 1995 the issue of whether the $18,120 attributable to the Jury Award is excludable from income under section 104(a)(2).

Section 61 broadly defines gross income as all income from whatever source derived. Any exclusion of items from income must be narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995). Section 104(a)(2) provides that gross income does not include "the amount of any damages received (whether by suit or by agreement * * * ) on account of personal injuries or sickness". Section 1.104-1(c), Income Tax Regs., provides that the term "damages received" "means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a

settlement agreement entered into in lieu of such prosecution."
Petitioner's settlement proceeds of $18,120 may be excluded from
gross income only if petitioners show that: (1) The underlying
cause of action giving rise to the recovery is "based upon tort
or tort type rights", and (2) the damages were received "on
account of personal injuries or sickness." Commissioner v.
Schleier, supra at 337. Both elements of this two-part test must
be satisfied before a taxpayer is allowed to exclude amounts
received from gross income.

In the case of amounts received pursuant to a settlement
agreement, the nature of the underlying claim, not the validity
of such claim, determines whether it is excludable under section
104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992).
Determination of the nature of the claim is factual. Bagley v.
Commissioner, 105 T.C. 396 (1995), affd. 121 F.3d 393 (8th Cir.
1997). A key question to ask is in lieu of what were the damages
paid. Church v. Commissioner, 80 T.C. 1104 (1983). Where the
settlement agreement lacks express language stating the reason
for the payment, the most important element is the intent of the
payor. Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir.
1965), affg. T.C. Memo. 1964-33. Although the payee's belief is
relevant to this inquiry, the ultimate character of the payment
hinges on the payor's dominant reason for making the payment.
Fono v. Commissioner, 79 T.C. 680 (1982), affd. without published

opinion 749 F.2d 37 (9th Cir. 1984); Hess v. Commissioner, T.C. Memo. 1998-240.

After a review of the Settlement Agreement, and the facts and circumstances surrounding it, we find that for 1992 through 1995, with respect to the $18,120 ($1,510 of each of the $3,000 monthly payments) that was specifically allocated to satisfy the Jury Award, there is no basis to conclude that such recovery was based upon a tort or tort type claim.

At the District Court trial, petitioner introduced Mr. Paul A. Randle (Mr. Paul Randle), an economist and professor of finance at Utah State University.  Mr. Paul Randle's testimony was offered to establish an economic value for potential loss of income suffered by petitioner.  Mr. Paul Randle determined petitioner's economic loss by taking the total economic value of petitioner's earning capacity, adjusted for inflation, based on his historical performance less any actual earnings after petitioner's termination and prior to trial.  Mr. Paul Randle determined that petitioner suffered a net economic loss of $159,238.  Following the Jury's special verdict, the District Court awarded petitioner that amount in paragraph 5 of the Judgment.  In the Settlement Agreement, the parties agreed that $1,510 of each of the $3,000 monthly payments was to be paid towards satisfaction of paragraph 5 of the Judgment.

On the basis of this record, we conclude that such amount was not based upon a tort or tort type claim, but rather it was on account of legal injuries of an economic character arising out of a contract claim. Accordingly, the $18,120 is not excludable under section 104(a)(2) and thus is includable in petitioners' income for taxable years 1992 through 1995.

We must now decide whether $17,880, the balance of the annual $36,000 payment, is excludable from income under section 104(a)(2) for each of the taxable years at issue.

Again, petitioner's settlement proceeds of $17,880 may be excluded from gross income only if petitioners show that: (1) The underlying cause of action giving rise to the recovery is "based upon tort or tort type rights" and (2) the damages were received "on account of personal injuries or sickness." Commissioner v. Schleier, supra at 337. The other principles set forth above also apply.

Petitioners contend that the $17,880 portion payable under the Settlement Agreement is excludable under section 104(a)(2) because, in addition to seeking punitive damages, petitioner asserted five tort claims against WNIC. Petitioners further contend that petitioner suffered personal injuries to his good name, personal integrity, and business reputation. Petitioners made the same contentions with respect to the $18,120 payment upon which we have ruled above. Thus, petitioners argue that

because they asserted tort claims and a colorable claim for personal injuries, that is sufficient to sustain the exclusion of the entire amount from gross income.

Respondent, on the other hand, contends that the payment petitioner received pursuant to the Settlement Agreement was not to settle a tort claim or to pay petitioner on account of personal injuries. Rather, respondent contends that the payment was to redress contract claims. Thus, respondent's position is that such payment fails the two-prong test under Commissioner v. Schleier, supra at 337, and therefore is not excludable from gross income under section 104(a)(2).

After a review of the Settlement Agreement, and the facts and circumstances surrounding it, we find that there is no basis to conclude that WNIC agreed to pay petitioner $17,880 per year for 20 years in order to settle a tort or tort type claim, or a claim for personal injuries.

The Settlement Agreement sets forth six provisions. Under the Settlement Agreement, WNIC was obligated to "make regular, guaranteed monthly payments to Green in the amount of $3,000.00 per month for a period of Two Hundred Forty (240) months, commencing October 1, 1987." There is no language in any part of the Settlement Agreement that specifically designates any portion of petitioner's annuity to be paid to settle a tort or tort type claim. Thus, we look to the intent of the payor, WNIC.

According to the Settlement Agreement, the parties entered into the agreement because they "desire to settle and resolve all present and potential controversies by and between them, including but not limited to termination of the Suits, the Appeal, * * * ; and [the parties] desire to terminate any and all contracts or contractual relationships between them, or any of them; * * * ."  Further, the Settlement Agreement provided that:

> 2. <u>Release</u>.  Green/FBC and WNIC/WNFS, for themselves, * * * mutually RELEASE, ACQUIT, AND FOREVER DISCHARGE, the other, * * * from all contracts of any kind whatsoever, * * * , and from all claims, demands, debts, and causes of action, known or unknown, past, present or future, arising out of, or relating to: (1) all written and oral agreements, including all supplements and modifications thereto, between them; (2) all claims asserted or assertable by WNIC/WNFS in the Suits, including, without limitation, all contractual and extra-contractual claims, statutory and common law claims, claims for actual and punitive damages, claims for an accounting, claims for attorney's fees, court costs, and the like; (3) all claims asserted or assertable by Green/FBC in the Suits, including, without limitation, all contractual and extra-contractual claims, statutory and common law claims, claims for actual and punitive damages, claims for attorneys' fees, court costs, and the like; (4) all claims asserted or assertable by Philips in the Suits, including but not limited to all contractual, tort, statutory, common law or other claims, * * * ; and (5) any act, transaction or occurrence prior to the date hereof.

> * * * * *

> 5. <u>Dismissal of the Suits</u>.  Green/FBC and WNIC/WNFS agree to cause all claims asserted in the Suits and in the Appeal against each other to be dismissed with prejudice, with the parties to bear their own respective attorneys' fees and costs.

Whereas the Green/FBC language in paragraph 2, clause (3) above encompasses contractual and extra-contractual claims, it

does not list "tort". Yet, in the very next sentence, the Settlement Agreement in paragraph 2, clause (4) above with respect to Philips (another party to the suits) specifically releases all "tort" claims. We view this as another indication that the Green/FBC and WNIC suits were based on contract, not on tort.

Thus, we do not believe that WNIC entered into the Settlement Agreement with the intention of settling a tort or tort type claim with respect to petitioner. Instead, we believe that WNIC intended to terminate any and all contractual relationships between petitioner and FBC.

Our position is further strengthened upon a review of the other evidence before us. Prior to the District Court trial, WNIC made a Motion in Limine to preclude petitioner from injecting into trial matters which WNIC believed were irrelevant, inadmissable, and prejudicial. WNIC sought to prevent petitioner from introducing evidence of the kind normally associated with tort claims and to limit the case to contractual matters. The District Court granted WNIC's motion, and directed petitioner to limit his presentation to a claim of breach of contract. Petitioner's attorney acquiesced. Although petitioner initially alluded to tort type claims in petitioner's complaint, the case proceeded to trial before the Jury to determine whether a breach of contract had occurred. It therefore follows that the Jury's

deliberation was limited to a cause of action under a breach of contract theory.

Moreover, in the Jury Instructions with respect to petitioner, the Jury was instructed to deliberate based upon only a breach of contract cause of action. The Jury was specifically instructed that "in awarding damages, if any, you are not permitted to award any amount for the purpose of punishing any party, or to make an example of any party." There were no tort or tort type cause of action instructions to the Jury with respect to petitioner.

As noted, the District Court's Judgment also is devoid of any reference to an award based on a tort or tort type claim. In addition to the $159,238, the Judgment awarded only amounts of commissions plus interest to petitioner and FBC. The Judgment of $1,521,628.04 was based solely on breach of contract claims.

After the Jury Trial, WNIC was faced with a liability of $1,521,628.04, in favor of petitioner and FBC. This Judgment reflected commissions due, interest thereon, and an amount for wrongful termination of the general agency contract. Obviously, WNIC thought it could reduce this liability by its appeal of the Judgment. Petitioner did not appeal. After settlement negotiations, WNIC was able to settle for $894,800.00, a reduction of $626,828.04. WNIC's liability as a result of the

Judgment based on breach of contract claims was substantially reduced by the Settlement Agreement.

Petitioner personally was to receive $3,000 a month for 20 years under the Settlement Agreement. This amount had a present value of $313,000. Mr. Stephen R. Randle (Mr. Stephen Randle), attorney for petitioner in the District Court action (and brother of Mr. Paul Randle), claimed he made representations about tort claims during the settlement negotiations. Because WNIC had opposed such contentions and the District Court had rejected such contentions, we do not see how such contentions at the settlement negotiations could change the nature of the underlying claims which were based on contract. Moreover, Mr. Stephen Randle testified that in the Settlement Agreement he designated $1,510 out of the $3,000 monthly annuity as representing personal injury to petitioner under paragraph 5 of the Judgment. Yet the Settlement Agreement contains no such designation, and that $1,510 is the amount we have found above is due to legal injuries of an economic character arising out of a contract claim. The only conclusion we can draw is that the remaining $1,490 monthly payment flows from the commissions plus interest awards and thus is clearly economic in nature.

As we stated above, petitioner's settlement proceeds may be excluded from gross income if petitioners show that not only was the underlying cause of action giving rise to the recovery based

upon tort or tort type rights, the damages were received on account of personal injuries or sickness.  Commissioner v. Schleier, 515 U.S. 323, 337 (1995).  Petitioner must prove the existence of both of these elements.

In the instant cases, we find that petitioners failed to establish that WNIC awarded petitioner the annuity on account of personal injuries or sickness.  The phrase "on account of" requires a causal connection between the personal injury sustained and the compensation received.  O'Gilvie v. United States, 519 U.S. 79 (1996); Brabson v. United States, 73 F.3d 1040 (10th Cir. 1996).

Although petitioners contend that petitioner suffered personal injuries to his good name, personal integrity, and business reputation, the Settlement Agreement does not provide for any part of the payment to be on account of personal injuries.  Further, petitioners failed to introduce any competent evidence to prove that WNIC intended to make payments to petitioner on account of personal injuries.

We find that WNIC's intent when it entered into the Settlement Agreement was to settle a contract dispute and not to settle a tort or tort type claim or a claim for personal injuries.  Accordingly, we conclude that section 104(a)(2) does not apply to exclude the $17,880 portion of the settlement payment from gross income.

In sum, in <u>Green v. Commissioner</u>, T.C. Summary Opinion 1995-167, we held that the $18,120 attributable to the Jury Award was includable in petitioners' income in 1991. We likewise hold that the $18,120 is includable in income for 1992 through 1995. Also, we find that the $17,880 is includable in income for 1991 through 1995. Thus, the entire annual payment of $36,000 ($18,120 + $17,880) is includable in income for each of the years from 1991 through 1995.

Finally, we must decide whether petitioners are liable for accuracy-related penalties in the amounts of $589 and $972 for 1994 and 1995, respectively. Section 6662(a) imposes an accuracy-related penalty in the amount of 20 percent of the portion of an underpayment of tax attributable to negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). Negligence is any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Moreover, negligence is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985). Disregard includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

Under section 6664(c), no penalty will be imposed with respect to any portion of any underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. This determination is based on all of the facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayers' effort to assess their proper tax liability for the years at issue. Sec. 1.6664-4(b)(1), Income Tax Regs.

On the record before us, we find that respondent's determination of penalties under section 6662(a) is correct. Petitioners filed their 1994 and 1995 returns after <u>Green v. Commissioner</u>, T.C. Summary Opinion 1995-167 was filed on September 5, 1995. Petitioners filed their 1994 return on October 12, 1995. Notwithstanding our holding that the $18,120 payment was not excludable under section 104(a)(2), petitioners nonetheless continued to exclude that amount on their 1994 and 1995 returns. Petitioners offered no reasonable explanation as to its exclusion. In this regard, we find that petitioners' actions were not those of a reasonable and prudent person under the circumstances. Accordingly, we sustain respondent's determination on this issue for 1994 and 1995.

We have considered all arguments made by petitioners and to the extent not discussed, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be entered for respondent</u>.