T.C. Memo. 1998-357

UNITED STATES TAX COURT

CLARENCE D. KIGHTLINGER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13890-97.                    Filed October 5, 1998.

R. Wyatt Mick, Jr., for petitioner.*

Timothy S. Sinnott, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ARMEN, Special Trial Judge:  This case was heard pursuant to
the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

---

* Briefs amicus curiae were filed by Robert W. Mysliwiec, on
behalf of Wayne E. and Judith A. Ellis, and by Mary A. Bridwell.
                                        (continued...)

Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1993 in the amount of $1,882, as well as an accuracy-related penalty under section 6662(a) for negligence or intentional disregard of rules or regulations in the amount of $376.

After a concession by respondent,[2] the only issue for decision is whether petitioner may exclude from gross income under section 104(a)(2) the settlement proceeds that he received during the year in issue. We hold that petitioner may not exclude such proceeds under section 104(a)(2).

## FINDINGS OF FACT

Some of the facts have been stipulated, and they are so found. Petitioner resided in Mishawaka, Indiana, at the time that his petition was filed with the Court.

Petitioner was employed by Whitehall Laboratories, Inc. (Whitehall) in Elkhart, Indiana, from August 1986 through some time in 1990 or 1991. Whitehall was a subsidiary of American Home Products Corp. (AHP). Wyeth-Ayerst Laboratories was a division of AHP.

---

(...continued)

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Respondent concedes that petitioner is not liable for the accuracy-related penalty under sec. 6662(a).

While employed at Whitehall, petitioner was a member of a labor union named the Oil, Chemical and Atomic Workers International Union (the Union).

During the 1980's, AHP initiated a plan to relocate part of its operations to Guayama, Puerto Rico.  As a result of this plan, AHP closed various plants operated by Whitehall and Wyeth-Ayerst, including the plant operated by Whitehall in Elkhart, by the end of 1991 or early 1992.  The plant closings caused approximately 1,100 Whitehall and Wyeth-Ayerst employees to be laid off and eventually lose their jobs.  Petitioner was one such individual.

In January 1991, the Union filed suit against AHP and various other entities and individuals in the United States District Court for the District of Puerto Rico (the District Court).  During that same year, the Union determined that a class action should be brought against AHP and other defendants on behalf of the employees that were laid off.  Consequently, in November 1991, the Union sent a notice entitled "Keep Whitehall Open" to the affected Whitehall employees.  The notice stated that it had become appropriate to seek individual damages for the laid off members of the Union "under the RICO [Racketeer Influenced and Corrupt Organization] complaint".  The notice provided further as follows:

> the remedy that we would be asking for [is]
> compensation for losses in wages and benefits for some

appropriate period of time but not less than the
duration of the current contract * * *.

In February 1992, the Union, its local chapter, and several
individuals (the Plaintiffs) filed a class action against AHP and
various other individuals and entities (the Defendants) in the
District Court.  The class action complaint (the Complaint)
stated in its preliminary statement that the Defendants:

> did unlawfully and without justification violate federal
> Racketeering laws and intentionally interfere with the
> protected right of Plaintiffs, including the prospective
> economic advantages, enjoyed by the herein described class
> of former Elkhart * * * employees.

The Complaint identified several individual plaintiffs as
typical class representatives.  An example of a paragraph
identifying an individual class member is as follows:

> Defendants' decision to relocate and transfer jobs to
> Puerto Rico has caused [individual class representative] a
> great personal loss consisting of his being terminated in
> December, 1989.  [Individual class representative] has since
> found no steady work and is forced to maintain temporary
> employment with no medical benefits.  Defendants' actions,
> which provoked his unemployment, caused him great emotional
> distress, feelings of low self esteem and self worth.
> [Individual class representative] now earns much less and
> lost fringe benefits due to his being terminated by
> Defendants.

Other individual class representatives were similarly
identified.  The Complaint alleged factually in great detail that
the Defendants, in the course of a scheme reasonably calculated
to defraud the plaintiffs, to evade State and Federal taxes, and
to avoid compliance with various other Federal and Puerto Rican
laws, violated Federal racketeering laws and interfered with the

Plaintiffs' economic advantage.  All of the factual allegations revolved around the Defendants' wrongdoing in violations of the above-mentioned laws.  There were no factual allegations regarding any personal injury.

The Plaintiffs based their claims on four counts consisting of two separate counts for RICO Act violations, one count for unlawful interference with prospective economic advantage, and one count for punitive damages.  As required by the RICO Act, the two counts for RICO Act violations alleged injury to the Plaintiffs' business and property.  Under the count for unlawful interference with prospective economic advantage, the Plaintiffs alleged that the Defendants' actions interfered with the rights of the Plaintiffs to "enjoy the fruits and advantages of their industries and efforts <u>as employees</u>".  (Emphasis added.)[3] Finally, by their count for punitive damages, the Plaintiffs claimed that the Defendants' negligent conduct caused "severe economic and financial harm as well as other damages" to the Plaintiffs.  No mention was made of any physical or emotional injury under any of the four counts.

Pursuant to the class action, all AHP employees affected by AHP's relocation to Guayama, Puerto Rico, received a legal notice of class action.  Petitioner was a member of this class action

---

[3]  Not relevant here, the class action also alleged interference with the Union's right to receive dues income from its members.

and received the above-mentioned notice.  The notice of class action summarized the underlying class action as follows:

Plaintiffs allege in their complaint that Private Defendants, who in the course of a scheme reasonably calculated to deceive Plaintiffs and to evade state and federal taxes, to avoid compliance with various other federal and Commonwealth laws and regulations, and to relocate jobs from a state of the United States * * * to Guayama, Puerto Rico, and who acting in concert with its corporate officers and agents of the Commonwealth of Puerto Rico, did unlawfully and without justification violate federal Racketeering laws and intentionally interfere with the protected rights of Plaintiffs, including the prospective economic advantages, enjoyed by the herein described class of former * * * employees.  Plaintiffs further allege that as a direct result of AHP's scheme to relocate its production facilities to Guayama, Puerto Rico to take advantage of tremendous tax savings, AHP caused workers to lose jobs, to be downgraded in their employment and/or to take early retirement, all of which caused substantial economic damages to members of the plaintiff class.  <u>Plaintiffs in this class action lawsuit seek to recover, on behalf of themselves and all other similarly situated workers, for the economic harm losses resulting from AHP's relocation to Puerto Rico, and the related events occurring thereafter.</u> [Emphasis added.]

The notice of class action further stated:

If you want to participate in this class action lawsuit and thereby made a claim <u>for economic loss</u> resulting from AHP's alleged wrongful relocation of pharmaceutical production jobs to Guayama, Puerto Rico, you need <u>do nothing</u>. [Emphasis added.]

\*    \*    \*    \*    \*    \*    \*

If you have any claims for damages arising out of AHP's relocation of production to Guayama, Puerto Rico that [are] <u>not</u> employment-related economic harms, these claims are not included in this class action.  Examples of economic harm included in this class action are lost wages or lost salary, lost health care and/or retirement benefits.

In July 1992, the parties reached a settlement without trial. Thereupon, the parties filed a joint stipulation of settlement with the District Court. Pursuant to this joint stipulation of settlement, AHP agreed to pay $24 million in full satisfaction of all of the claims brought against it in the class action. The joint stipulation of settlement did not allocate the settlement proceeds for any particular claim. However, the proceeds were allocated among court-approved expenses, class counsel, the Union, and class members. The joint stipulation of settlement provided guidelines pursuant to which an independent trustee would determine the appropriate amount to compensate individual class members for their demonstrated employment-related economic harm. Pursuant to this stipulation, economic harm was to be measured based upon factors such as age, duration of employment with the company, salary history, and subsequent employment history, including the date of new employment and salary history. Noneconomic injury was not a factor to be considered in the independent trustee's allocation of the recovery to the class members.

Subsequently, class members, including petitioner, received a notice of proposed settlement and settlement hearing. The notice of proposed settlement reiterated that the lawsuit sought to recover for harm resulting from the Defendants' violation of the RICO Act and interference with the class members' prospective

economic advantages as employees. The notice of proposed settlement then informed the class members regarding the method selected to compensate individual class members for their demonstrated economic harm arising from the loss of their employment. Individual class members were given the option to exclude themselves from the proposed settlement for any reason, including the possibility that their claim was more expansive than one for employment-related economic loss.

Individual class members were required to submit a proof of claim and release to the independent trustee to claim a portion of the recovery. The proof of claim and release form was designed to measure each individual class member's degree of employment-related economic harm. The form inquired as to the individual class member's age, years of service with AHP, job classification at the time of separation, whether the individual was bumped down before separation, whether the individual received severance pay at the time of separation, how the individual's current benefits differed from those received at AHP, and the individual's current sources of income. No inquiry was made as to whether an individual class member had suffered any physical or emotional injury.

Petitioner claimed entitlement to a portion of the class action recovery and stated in his proof of claim as follows:

The economic damages that I have suffered since my termination from Whitehall Lab. in Elkhart has had a devastating hardship on my financial future and security.

Since losing my job, I have had to withdraw all my savings and cash in securities that I had put aside for my retirement years.

When I was hired at Whitehall Lab. in Elkhart in August of 1986, I felt as though I had secured my future with the good wages I would be able to make during my years until retirement. Also I felt as though I would have good retirement benefits secured for my "golden years". I knew if I were given a chance to work at this facility for the future 27 to 30 years, I would be in a good position with full pension and medical benefits.

Currently I am working at a job that pays less than 50% of the wages I made at Elkhart's Whitehall Lab.

In moving the facility to Puerto Rico the results were that I was one of over 800 plus workers whose life has changed. Leaving me with an insecure future, and with the possibility that I will never have the financial security that I had while employed at Whitehall.

Petitioner may have suffered some depression as a result of being laid off. However, petitioner did not consult with a doctor for any such condition. Petitioner did not claim any emotional or physical injury and did not opt out of the settlement agreement to pursue a claim for personal injury or otherwise.

A final order and judgment in the class action was entered in September 1992. In that document, the District Court approved the joint stipulation of settlement filed by the parties. The District Court retained jurisdiction solely for the purpose of ensuring proper administration of the settlement proceeds.

Subsequently, a "motion for distribution of notice and release form" was filed by the Plaintiffs. The motion outlined the independent trustee's determination of the method for the allocation of the funds among the individual class members. Pursuant to the guidelines in the joint stipulation of settlement, the independent trustee considered factors such as age, years of seniority, and the amount of severance pay received. Some of the independent trustee's findings, as pertaining to petitioner,[4] are as follows:

> Since some terminated employees received up to two weeks severance and others received less, the first priority will be to distribute the settlement funds to bring each qualified claimant up to two weeks of severance pay for each full year of seniority. Any remaining funds will be distributed mainly to terminated employees who did not transfer or receive ERIP [early retirement incentive program] on the basis of the following point system:
>
> [The point system allocated points based on: (1) Age, increasing from age 25 to age 51 and decreasing from age 51 and up; and (2) years of service, increasing per year of service.]
>
>     \*    \*    \*    \*    \*    \*    \*
>
> The rationale for basing this point system on seniority and age is that workers who were near retirement age when they were terminated were not damaged as much as younger workers, (50, say) who probably will have more years of lower-paying work or unemployment than a 58-year-old worker who was closer to retirement. Similarly, young workers

_____

[4] Pursuant to the joint stipulation of settlement, claimants were divided into different priority groups. The group with the top priority included ex-employees who were terminated without transfer of benefits under an early retirement incentive program (ERIP). Petitioner was a member of this group inasmuch as ERIP was not available to any of the Union members.

(say, at age 25) are assumed to suffer less damage than older workers, who have greater difficulty finding comparable jobs. The distribution formula therefore reflects pension eligibility, as well as age and seniority.

Thereafter, in December 1993, the District Court ordered the disposition of the settlement proceeds to individual class members pursuant to the independent trustee's allocations (except for some minor changes not relevant here). In the same order, the District Court noted:

> Finally, the Court has received some correspondence from class members expressing concern regarding the taxability of their settlement awards. One particular class member * * * suggests that twenty percent (20%) of the payment amount be withheld for the purpose of satisfying federal income taxes. At this time the Court makes clear that there will be no withholding of funds from the settlement award to class members for tax purposes. This was not a lawsuit about lost wages. <u>Therefore, each member shall be responsible for taxes based on their particular situation</u>. [Emphasis added.]

Petitioner received his portion of the recovery from the class action, $12,057.45, in December 1993. On his 1993 return, petitioner did not include this amount in gross income, claiming exemption under section 104(a)(2). In April 1994, respondent informally notified class members, such as petitioner, that the settlement proceeds were not excludable from gross income under section 104(a)(2).

In March 1995, pursuant to a request by the Plaintiffs, the District Court issued another order. In that order, the District Court found that the class action: (1) Involved tort-like claims arising from allegations of wrongful conduct and was not about

lost wages; and (2) involved personal injury-like claims for emotional distress as evidenced from the pleadings. The Court stated that it "was closely involved with the settlement, and would allocate the total settlement to such tort-like claims and remedies."

In April 1997, respondent issued the notice of deficiency involved herein. In the notice of deficiency, respondent determined that petitioner was not entitled to an exemption under section 104(a)(2) and included petitioner's recovery in gross income for 1993, the year of its receipt.

OPINION[5]

1. General Discussion of Section 104(a)(2)

Except as otherwise provided, gross income includes income from all sources. Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). Although section 61(a) is to be broadly construed, statutory exclusions from income are narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 336-337 (1995); United States v. Burke, 504 U.S. 229, 233 (1992); Kovacs v. Commissioner, 100 T.C. 124, 128 (1993), affd. per curiam without published opinion 25 F.3d 1048 (6th Cir. 1994).

---

[5] As previously noted, briefs amicus curiae were filed by or on behalf of taxpayers similarly situated to petitioner. In addressing petitioner's contentions we have also considered the contentions made by the amici curiae.

As an exception to the general rule under section 61(a), section 104(a)(2) provides that gross income does not include "the amount of any damages received (whether by suit or agreement * * *) on account of personal injuries or sickness". Section 1.104-1(c), Income Tax Regs., provides in pertinent part:

> (c) Damages received on account of personal injuries or sickness. * * * The term "damages received (whether by suit or agreement)" means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

An amount may be excluded from gross income only if it is received both: (1) Through prosecution or settlement of an action based upon tort or tort-type rights; and (2) on account ofpersonal injuries or sickness. Commissioner v. Schleier, supra; Wesson v. United States, 48 F.3d 894, 901-902 (5th Cir. 1995); Bagley v. Commissioner, 105 T.C. 396, 416 (1995), affd. 121 F.3d 393 (8th Cir. 1997).

2. Personal Injury

Personal injury need not be purely physical in nature and may include nonphysical emotional injury. United States v. Burke, supra; Threlkeld v. Commissioner, 87 T.C. 1294 (1986), affd. 848 F.2d 81 (6th Cir. 1988). In United States v. Burke, supra at 239, the Supreme Court described the traditional harms associated with personal injury as "pain and suffering, emotional distress, harm to reputation, or other consequential damages

(e.g., a ruined credit rating)."  The Supreme Court distinguished such personal injuries from "legal injuries of an economic character" such as those arising out of the unlawful deprivation of the opportunity to earn wages through wrongful termination. Id.

Consequently, damages received for lost wages in connection with the settlement of economic rights, such as those arising out of a breach of contract, are not excludable from income under section 104(a)(2).  Id.; Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part on another issue 70 F.3d 34 (5th Cir. 1995) and cases cited therein.

Similarly, recovery for "business or property" is separate and distinct from recovery for personal injury.  Genty v. Resolution Trust Corp., 937 F.2d 899, 918 (3d Cir. 1991); Berg v. First State Ins. Co., 915 F.2d 460, 464 (9th Cir. 1990); Rylewicz v. Beaton Servs., Ltd., 888 F.2d 1175, 1180 (7th Cir. 1989); see Reuter v. Sonotone Corp., 442 U.S. 330, 339 (1979) (holding that the phrase "business or property" in the context of the Clayton Act, ch. 323, sec. 4, 38 Stat. 731, 15 U.S.C. sec. 15, does not denote physical or emotional harm to a person.)  In Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1169 (3d Cir. 1987), the Court of Appeals held in this regard as follows:

> A plaintiff seeking recovery under RICO must allege injury "in his business or property" caused by violation of the Act.  In Reuter v. Sonotone, 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979), the Supreme Court construed

identical language from the Clayton Act on which the RICO statute was patterned. The Court concluded that Congress intended the phrase "business or property" to exclude personal injuries. Id. at 339, 99 S.Ct. at 2331.

A.  The Settlement Agreement

In the case before us, petitioner received a portion of the recovery in a class action pursuant to a settlement agreement. When damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such damages are excludable under section 104(a)(2).  United States v. Burke, supra; Thompson v. Commissioner, 866 F.2d 709, 711 (4th Cir. 1989), affg. 89 T.C. 632 (1987); Robinson v. Commissioner, supra.  Determination of the nature of the claim is factual.  Bagley v. Commissioner, supra; Stocks v. Commissioner, 98 T.C. 1, 11 (1992). "[T]he critical question is, in lieu of what was the settlement amount paid."  Bagley v. Commissioner, supra at 406.  Therefore, the intent of the payor is the most important factor.  Knuckles v. Commissioner, 349 F.2d 610, 612 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Robinson v. Commissioner, supra; Stocks v. Commissioner, supra at 10.

We first consider the settlement agreement in deciding the intent of the payor in paying the settlement proceeds.  See Robinson v. Commissioner, supra.  The joint stipulation of settlement involved herein did not specifically allocate the

settlement proceeds for any particular claim.  However, the joint stipulation of settlement provided that an independent trustee would determine appropriate amounts to compensate individual class members for their "demonstrated economic harm".  Guidelines outlined in the joint stipulation of settlement based economic harm on the loss or reduction of wages resulting from the loss of employment.  Personal injury was not considered.  Therefore, the settlement agreement indicates that the Defendants paid the settlement proceeds on account of economic harm arising from the deprivation of a class member's opportunity to earn wages.  Such recovery is clearly not on account of personal injury.

We shall not, however, limit our inquiry to the joint stipulation of settlement.  We shall consider other factors to ascertain the intent of the Defendants in paying the settlement proceeds.  See Knuckles v. Commissioner, supra; Robinson v. Commissioner, supra; Stocks v. Commissioner, supra.

B.  The Complaint

When payments are received pursuant to a settlement agreement from which we cannot clearly discern why the payments were made, the underlying complaint is normally examined as an indicator of the payor's intent.  See Robinson v. Commissioner, supra.  Logic dictates that defendants will ordinarily determine their liability by taking into account the allegations made in the complaint.  See Threlkeld v. Commissioner, supra; Church v.

Commissioner, 80 T.C. 1104 (1983). Accordingly, the payor's intent can be discerned from the allegations made in the complaint.

We must therefore consider the allegations made by class members, such as petitioner, in the Complaint. We observe at this point that the mere mention of "emotional harm" in a complaint does not, by itself, serve to exclude the recovery from gross income under section 104(a)(2). Clearly such a rule would improperly expand the scope of section 104(a)(2) because the "emotional harm" language could easily be included in every complaint, even if such claim were only a "throwaway" claim.

What is more, the mere fact that a taxpayer suffers "personal" injury from a defendant's conduct is insufficient to satisfy the "on account of personal injury or sickness" test. Commissioner v. Schleier, 515 U.S. 323 (1995). Only recovery that is "attributable to" such personal injury is excludable from gross income. Id.

The Supreme Court clarified the law in this regard in Commissioner v. Schleier, supra. In that case, the Supreme Court distinguished the recovery that a taxpayer receives as a result of an automobile accident from the recovery that a taxpayer receives as a result of age discrimination under the Age Discrimination in Employment Act (ADEA). Whereas both individuals may suffer emotional harm as a result of a

defendant's wrongdoing, only the accident victim's recovery can be considered as received "on account of personal injury". The ADEA does not provide recovery for personal injury. Therefore, although the ADEA claimant may have suffered some emotional harm, the recovery he or she received is not on account of his or her personal injury. Rather, the ADEA claimant's recovery is on account of the wrongful discrimination leading to his or her discharge.

Similarly, the RICO Act does not provide a remedy for personal injuries. See Genty v. Resolution Trust Corp., supra at 918; Berg v. First State Ins. Co., supra at 464; Rylewicz v. Beaton Servs., Ltd., supra at 1180; Grogan v. Platt, 835 F.2d 844, 847 (11th Cir. 1988); Zimmerman v. HBO Affiliate Group, supra. Rather, entitlement to recovery under the RICO Act is predicated on harm to the claimant's business or property. Rylewicz v. Beaton Servs., Ltd., supra. Recovery for "business or property" is separate and distinct from recovery for personal injury. See Rylewicz v. Beaton Servs., Ltd., supra.

The Complaint in the class action was based on several claims. First, and predominantly, the Plaintiffs alleged injury to their business and property under the RICO Act. The factual allegations were clearly aimed at establishing such wrongful conduct. In this regard, and as is the case with an ADEA claimant, petitioner did not receive his recovery on account of

personal injury. Rather, he received his recovery on account of the Defendants' alleged violation of the RICO Act leading to his discharge. Recovery based on such allegations could only be for injury to petitioner's business and property. The amount of the recovery is independent of the existence or extent of any personal injury that petitioner may have suffered. See Commissioner v. Schleier, supra.

Petitioner argues that the RICO Act was meant to expand the remedies available to claimants and does not limit an individual's cause of action. Although this assertion may be true, the Plaintiffs in the class action did not, in fact, seek to establish any personal injury, but limited their remedy to that provided by the RICO Act.[6] Cf. United States v. Burke, 504 U.S. 229, 233 (1992) (holding that the taxpayer's recovery under Title VII of the Civil Rights Act of 1964, Pub. L. 88-352, 78 Stat. 253, was not excludable--the underlying action not constituting a tort-type claim--even though taxpayer had other tort-type remedies available for the wrongful discrimination against him.)

Secondarily, the Complaint alleged interference with the class members' prospective economic advantage as employees.

---

[6] As we have already noted, we do not think that the Plaintiffs actually sought to establish personal injury. The Complaint merely mentions "emotional distress" without any supporting factual allegations within the context of a lengthy (90-page) and carefully drafted complaint.

Recovery for the Defendants' interference with the class members' economic advantage as employees is similarly not on account of personal injury. See Commissioner v. Schleier, supra, United States v. Burke, supra, Robinson v. Commissioner, 102 T.C. at 126. Petitioner asserts that individual class members did not have a direct contractual relationship with the Defendants. Even if such assertion is true, class members based their claim for interference with prospective economic advantage on an employer/employee relationship. Their complaint sought remedy for the Defendants' alleged wrongful interference with their rights "to enjoy the fruits and advantages of their industries and efforts as employees". This is further evidenced by the November 1991 notice to the class members, which stated:

> The remedy that we would be asking for [is] compensation for losses in wages and benefits for some appropriate period of time but not less than the duration of the current contract * * * [Emphasis added.]

Clearly, recovery for economic injury based on such a contractual type claim is excluded from the scope of section 104(a)(2). See Robinson v. Commissioner, supra, and cases cited therein.

The Plaintiffs also sought punitive damages for the harm suffered as a result of the Defendants' alleged wrongful conduct. Contrary to petitioner's suggestion, the exclusion provided by section 104(a)(2), as in effect for the year in issue, does not

apply to a recovery for punitive damages not attributable to "physical" injury. Specifically, section 104(a) provides that the exclusion from gross income for damages received on account of personal injuries "shall not apply to any punitive damages in connection with a case not involving physical injury or physical sickness." The Complaint did not even mention any physical injury, nor does petitioner claim any physical injury. Therefore, any portion of the settlement proceeds that may be allocated to recovery for punitive damages is outside the scope of section 104(a)(2).

As a final note in this regard, we refer to the manner in which counsel for the Plaintiffs summarized the class action Complaint in two notices sent to the class members. Specifically, we refer to the following excerpt contained in both notices:

> Plaintiffs in this class action lawsuit seek to recover, on behalf of themselves and all other similarly situated workers, for the economic harm losses resulting from AHP's relocation to Puerto Rico, and the related events occurring thereafter.

Having considered the allegations made in the Complaint and the Plaintiffs' counsels' interpretation of the class action, we cannot find that the Defendants intended to pay class members, such as petitioner, on account of personal injury. Although mention of emotional harm was made, we do not think that an action that revolved around RICO violations and interference with

the prospective economic advantages of employees sought or obtained redress for any of the traditional harms associated with personal injury such as pain and suffering or emotional distress. See United States v. Burke, supra.

C.  Other Factors

Other factors support respondent's contention that petitioner's recovery was not on account of personal injury.  As mentioned, the two notices received by petitioner clearly describe the class action as one for the recovery of lost wages and employment-related economic harm.  In fact, class members were informed that claims for any harm other than employment-related economic harm should be pursued by the class member independently of the class action.  Petitioner did not otherwise pursue a claim for any personal harm.  Rather, he claimed his portion of the recovery by describing how the Defendants' actions had economically affected him.

Further, the independent trustee in charge of allocation of the funds was expected to, and did, devise an arrangement designed to compensate the class members for employment-related economic harm.  The independent trustee allocated funds to ensure that qualified claimants received up to 2 weeks of severance pay for each full year of seniority.  The remaining funds were distributed to terminated employees, such as petitioner, who did not transfer or receive the benefit of the early retirement

- 23 -

incentive program. The funds were distributed on the basis of a point system that reflected pension eligibility, as well as age and seniority. The entire distribution arrangement revolved around lost wages and retirement benefits and sought to make class members "economically whole".

Petitioner contends that economic loss can be used to measure the extent of personal injury, as is the case in many automobile accident injury cases. In this regard, petitioner relies on Byrne v. Commissioner, 883 F.2d 211, 215 (3d Cir. 1989), revg. 90 T.C. 1000 (1988), for the proposition that nonpersonal consequences of a personal injury, such as loss of future income, are often the most persuasive means of proving the extent of the personal injury that was suffered. We agree that using economic loss factors as a yardstick to measure the extent of personal injury does not necessarily bar a recovery from the scope of section 104(a)(2). See Bent v. Commissioner, 87 T.C. 236, 251 (1986), affd. 835 F.2d 67 (3d Cir. 1987); State Fish Corp. v. Commissioner, 48 T.C. 465, 476-77 (1967), modified on other grounds 49 T.C. 13 (1967).

However, petitioner's reliance on Byrne v. Commissioner, supra, and the accident injury cases is misplaced. The operative factor in these cases is that there is in fact a personal injury and that recovery is made on account of such injury. By contrast, petitioner's loss of employment by the Defendants'

alleged wrongful conduct, the basis on which petitioner received his recovery, is not a personal injury. Cf. Commissioner v. Schleier, 515 U.S. 323 (1995). Further, the focus of the settlement in the class action was to make class members, such as petitioner, "economically whole" from the effects of their loss of employment. Therefore, economic factors were not merely used as a yardstick to measure the extent of the injury; rather, they were the harm for which petitioner received his compensation. This is evidenced by the joint stipulation of settlement, by the independent trustee's findings as reflected in the motion for distribution of notice and release form, by the inquiries made in the proof of claim form, and finally, by the proof of claim as completed and submitted by petitioner.

D. The District Court's Orders

Finally, we consider the orders issued by the District Court in December 1993 and March 1995. As a preliminary matter, we observe that because res judicata and collateral estoppel are affirmative defenses and neither was pleaded by petitioner, they are deemed waived.[7] See Rule 39; Monahan v. Commissioner, 109

---

[7] We note, however, that even if petitioner had pleaded these affirmative defenses, res judicata and collateral estoppel would not apply if for no other reason than the characterization of the settlement's tax consequences was not essential to the prior proceeding. See Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), affd. 904 F.2d 525 (9th Cir. 1990), setting forth the following five conditions that must be satisfied prior to application of issue preclusion in the context of a factual

(continued...)

T.C. 235, 250 (1997); <u>Green v. Commissioner</u>, T.C. Memo. 1998-274 (collateral estoppel); see also <u>Gustafson v. Commissioner</u>, 97 T.C. 85, 89-92 (1991) (if an affirmative defense is not pleaded, it is deemed waived).  We do, however, consider the contents of these orders in our factual inquiry.

First, the December 1993 order states that the District Court would not decide what amount should be withheld as income tax from the recovery.  Rather, the District Court left it up to the class members, "based on their particular situation", to determine the amount of tax due.  Contrary to petitioner's assertion, this order does not, on its face, establish that petitioner's recovery is excludable under section 104(a)(2).

The District Court's March 1995 order does, however, state that the facts and circumstances of the class action involved tort-like and personal injury-like claims for emotional distress. This order also states that the District Court "was closely

------

[7](...continued)
dispute:
  (1) The issue in the second suit must be identical in all respects with the one decided in the first suit.
  (2) There must be a final judgment rendered by a court of competent jurisdiction.
  (3) Collateral estoppel may be invoked against parties and their privies to the prior judgment.
  (4) The parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision.
  (5) The controlling facts and applicable legal rules must remain unchanged from those in the prior litigation.

involved with the settlement, and would allocate the total settlement to such tort-like claims and remedies."

We do not understand why, in light of all the contrary evidence, the District Court issued such an order. However, because this order did not result from an adversary proceeding, we find that it does not accurately reflect the realities of the parties' settlement. Cf. Robinson v. Commissioner, 102 T.C. 116 (1994) (the allocation in the settlement agreement approved by the court is not controlling when the allocation itself did not result from an adversary proceeding); Bagley v. Commissioner, 105 T.C. 396 (1995) (same); Hess v. Commissioner, T.C. Memo. 1998-240 (same).

Although the proceedings prior to the settlement agreement were certainly adversarial, the parties were no longer adversaries after they reached a settlement. More than a year after the settlement, the Plaintiffs desired to have the settlement payment linked to tort-type injuries received on account of personal injuries and met with no opposition from the Defendants. Once the Defendants paid the settlement proceeds they did not have any interest in how such funds were allocated. The Plaintiffs requested the District Court to issue such an order, and with the Defendants not objecting, the District Court did so.

We find, therefore, that in light of all the other facts and circumstances, the March 1995 order does not establish that petitioner received his recovery on account of personal injury.

3. <u>Tort-type Claim</u>

Petitioner contends that under the law for the taxable year in issue, if recovery is received on account of a tort-type claim, then there is no requirement that recovery be on account of personal injury. In this regard, petitioner relies on <u>United States v. Burke</u>, 504 U.S. 229 (1992). We disagree with petitioner's contention, which is squarely refuted by <u>Commissioner v. Schleier</u>, 515 U.S. 323 (1995).

In <u>Commissioner v. Schleier</u>, <u>supra</u>, the Supreme Court held that even if the underlying lawsuit is tort-type, the recovery itself must be "on account of personal injury". <u>Id.</u> Further, the Supreme Court noted that its holding in <u>United States v. Burke</u>, <u>supra</u>, did not imply a contrary rule. The following excerpt from <u>Commissioner v. Schleier</u>, <u>supra</u> at 334-336, clearly establishes the law in this regard:

> [Appellee] also suggests that our decision in <u>United States v. Burke</u>, 504 U.S. 229 (1992), compels the conclusion that his settlement award is excludable. In <u>Burke</u>, we rejected the taxpayer's argument that the payment received in settlement of her backpay claim under the pre-1991 version of Title VII of the Civil Rights Act of 1964 was excludable from her gross income. Our decision rested on the conclusion that such a claim was not based upon "tort or tort type rights" within the meaning of the regulation quoted above [sec. 1.104-1(c), Income Tax Regs.]. For two independent reasons, we think <u>Burke</u> provides no foundation for [appellee's] argument.

* * * * * * *

Second, and more importantly, the holding of <u>Burke</u> is narrower than [appellee] suggests. In <u>Burke</u>, following the framework established in the Internal Revenue Service regulations, we noted that § 104(a)(2) requires a determination whether the underlying action is "based upon tort or tort type rights." * * * In so doing, however, we did not hold that the inquiry into "tort or tort type rights" constituted the beginning and end of the analysis. In particular, though <u>Burke</u> relied on Title VII's failure to qualify as an action based upon tort type rights, we did not intend to eliminate the basic requirement found in both the statute and the regulation that only amounts received "on account of personal injuries or sickness" come within § 104(a)(2)'s exclusion. Thus, though satisfaction of <u>Burke</u>'s "tort or tort type" inquiry is a necessary condition for excludability under § 104(a)(2), it is not a sufficient condition. [Fn. ref. omitted.]

Because the record does not establish that the settlement recovery was attributable to any personal injury, we need not decide whether the underlying class action was tort-type.

4. <u>Conclusion</u>

Consistent with the requirement that exclusions from income are to be narrowly construed, we hold that the settlement proceeds received by petitioner are not excludable from gross income under section 104(a)(2).

Petitioner has raised other arguments that we have considered in reaching our decision. To the extent that we have not discussed these arguments, we find them to be without merit.

To reflect our disposition of the disputed issue, as well as respondent's concession,

Decision will be entered for respondent as to the deficiency in tax and for petitioner as to the accuracy-related penalty.